[Cite as *State v. Jabbaar*, 2013-Ohio-1655.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98218

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALI JABBAAR

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551246

**BEFORE:** Boyle, P.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Brent C. Kirvel
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Ali Jabbaar, appeals his conviction, raising a single assignment of error:

> The Defendant's plea was not knowingly, voluntarily, and intelligently entered, in derogation of Defendant's right to due process, but was entered as the result of coercion by the trial court.

**{¶2}** We affirm.

### Procedural History and Facts

**{¶3}** In June 2011, Jabbaar was indicted on one count of kidnapping, with a sexual motivation specification, and three counts of rape, each with sexually violent predator specifications. All of the counts also carried one- and three-year firearm specifications. Jabbaar pleaded not guilty to all of the offenses, and the matter was set for trial.

**{¶4}** Four days prior to the trial, a pretrial was held where the trial judge had the state's formal plea offer placed on the record. Jabbaar's sole assignment of error is based on the trial judge's participation at this pretrial; accordingly, we set forth in detail what occurred at this pretrial.

**{¶5}** Defense counsel first provided a status of the case, indicating that he had conveyed the state's plea offer to Jabbaar but that Jabbaar "wants to go to trial."

**{¶6}** The trial judge then requested the prosecutor to outline the evidence of the state's case. The prosecutor told the court that a portion of the incident that led to Jabbaar's arrest was caught on videotape. According to the prosecutor, the video

reflected a man, later identified by the victim as Jabbaar, confronting the victim at the rapid station in East Cleveland. Jabbaar is then seen "marching" the victim out of the front doors of the rapid station and then out of view of the camera. According to the victim, Jabbaar escorted her at gunpoint outside of the rapid station to a nearby house where he vaginally and orally raped her. Following the rapes, Jabbaar let the victim go.

{¶7} The prosecutor further stated that on the same evening of this offense, Jabbaar's grandfather had reported Jabbaar missing, "perhaps emotionally distraught," and that Jabbaar had taken his 9 mm handgun. Jabbaar was arrested later that same evening and was found with his grandfather's handgun.

{¶8} Following the prosecutor's summary of the evidence of its case, the trial court engaged in a colloquy with the prosecutor regarding the potential sentence for the charges. The prosecutor informed the judge that the rape and kidnapping counts would not merge, to which the judge responded: "So he's looking at ten years on Count 1 kidnapping plus three years for the gun? * * * Tens years on the rape. * * * So he's looking at 33 years on the first case alone." After the prosecutor reminded the judge of the sexually violent predator specifications, the court stated, "[s]o he's looking at potential life in prison."

{¶9} The prosecutor then indicated that the state was willing to offer a plea to kidnapping and one count of rape with a three-year firearm specification and a sexual motivation specification, "capping essentially as a possible 23 * * *." The trial court interrupted, stating: "And, of course, it could be much less."

**{¶10}** The defense counsel then interjected, stating the following:

With respect to the court's last comment about potentially being much less, we — the Court was gracious enough and patient enough previously at pretrial to go over this case [in chambers]. And, of course, there's no promise of any potential sentence. But if we resolve the case in a manner that has been offered by the State of Ohio, the Court gave us sort of a view inside your mind as to how to view these kind of cases.

**{¶11}** The trial court responded to the defense counsel and then directly addressed Jabbaar as follows:

Okay. If convicted you're very probably looking at potential life in prison. * * * That puts the court in a tough spot.

If you plea, on the other hand, take responsibility, you could do far less time. However, the stranger rapes, abduction at gunpoint by a stranger to, you know, a location where she's carried off to, it's such a serious offense that you'd also have to do a substantial period of time in a state penal institution. But there's a huge difference between 15 years and life, or 13 years and life. Do you understand?

**{¶12}** After Jabbaar responded, "yes," the trial court further inquired if Jabbaar knew "that there is, apparently, DNA that links you to this crime." The trial judge then recited some additional evidence that the state was prepared to offer, including the firearm recovered from Jabbaar, the videotape, and the victim's testimony, and then inquired, "Have you considered a plea?" Jabbaar indicated that he had but would rather "fight it."

**{¶13}** The trial judge asked Jabbaar if he had any explanation for the DNA recovered from the victim. Upon Jabbaar's acknowledgment that he had no recollection of the event, the trial court inquired into Jabbaar's mental condition, and then stated, "Look, you know, it seems to me that you certainly should consider a plea."

**{¶14}** The trial judge then discussed a letter that he had received from Jabbaar regarding his speedy trial rights and some other "requests" of the court. Noting the importance of the matter, the trial judge asked Jabbaar what other requests he had via his letter. Jabbaar indicated that the letter had a request for a haircut that was taken care of last week. The trial judge then expressed the following:

> So you're telling me that despite the fact that you could be sentenced to a state penal institution for up to life on this offense, despite the fact that your DNA has been recovered from the victim's person in her body that you wish to go to trial without any explanation for your DNA being there?

**{¶15}** At this point, Jabbaar indicated a change of heart, stating that "[a]s of this moment, as I sit here, things are looking more obstruct."

**{¶16}** Upon the trial court requesting clarification as to Jabbaar's response, Jabbaar stated the following: "More, more real. I'm not sure if I want to go to trial now or if I want to take a plea. My grandfather is the only person I have in my corner and I haven't had a chance to speak with him." Jabbaar then explained why he had not spoken with his grandfather: "I haven't had the opportunity to use the phone since I've been

presented with this recent deal. I've only * * * I just got recollection of this deal last night before I have not had any notice of taking a plea deal."

{¶17} At this point, the prosecutor interrupted, indicating that the state has been "gracious enough" to make an offer to resolve the case today. And that if Jabbaar did not want to take the deal that day, the state was prepared to go to trial on Monday.

{¶18} Jabbaar expressed confusion to the plea offer, indicating that, "I have not had the opportunity to have any type of deal presented before this. * * *[T]his is just a load dropped on me overnight."

{¶19} The trial court then addressed all the parties, stating:

Here's my thought. And, [prosecutor], in fairness to this guy, I'm telling him the range is going to be between 13 and 15. That's a lot of time. And you're going to do time if you plea. Do I have a problem if he takes until Monday? I don't. And I would encourage the State the keep the plea bargain offer.

But I can't make them do that. Okay? So I'm just going to tell you this. We'll leave it set for trial on Monday, and if there's a plea, there's a plea. If there's not a plea, we'll go to trial.

But, look, you know, you have been in a position where you have been under indictment on this case * * * the offense occurred in May. This is hardly new information. * * * You know you've been looking at a potential life in prison for a period time now. And, therefore, you know, you need to make a decision.

I have absolutely no problem trying the case. You're presumed innocent. You have an excellent attorney. You can try the case. You can remain silent. You do have civilian clothes. We did get you a haircut. I'm convinced after a review of the record there is no speedy trial issue whatsoever. He has two files.

So, again, I can't tell the State what to do. I think you should have some more time. If you want to talk to your people. If you want to talk to your attorney, talk to your attorney. If the plea is still open Monday, it's open Monday. If you feel you can't go forward, I will give you until that time. That's all I can tell you. Do you have any questions you want to ask me?

**{¶20}** After Jabbaar indicated that he had no further questions, the matter adjourned until the following Monday, at which time the trial court engaged in an extensive plea colloquy with Jabbaar, advising him of his constitutional rights and fully complying with Crim.R. 11. Specifically, the trial court stated the following:

> You've been indicted but you're presumed innocent. You have a right to a jury trial or bench trial, at which time the State has the burden of proving you guilty beyond a reasonable doubt. You have no burden of going forward here today.
>
> You have an excellent attorney who will remain with you throughout these proceedings. He could try this case either to a jury or to a judge. Again, the State has the burden of proving you guilty beyond a reasonable doubt.
>
> Now, at the time of the trial, your attorney may confront your accusers, call witnesses, use the subpoena power of the Court. For your part, you may testify or remain silent. No one may comment on your failure to testify or compel you to testify or prevent you from testifying. No one can mention your prior criminal record if you do not testify.

**{¶21}** The trial court then reassured Jabbaar that it would bifurcate the sexually violent predator specification from the rape counts so that the jury would not be aware of Jabbaar's prior conviction and that the matter would be tried to the bench. After explaining this to Jabbaar, the trial court emphasized the following again:

So if you choose to try this case, the Court would extend that consideration to you because I think it's important.   You need to know that.   You could try this case to a jury of your peers and they would not know you have a prior conviction.

**{¶22}** Following this discussion, the trial court informed Jabbaar of the maximum penalties involved in pleading guilty, including that he would be labeled a Tier III sexual offender and subject to a mandatory term of five years of postrelease control.

**{¶23}** Jabbaar ultimately pleaded guilty to the amended indictment, namely, one count of kidnapping, with a three-year firearm specification and sexual motivation specification, and one count of rape.   The trial court sentenced Jabbaar to a total term of 13 years in prison.   This appeal now follows.

<u>Guilty Plea</u>

**{¶24}** In his single assignment of error, Jabbaar argues that his plea was not voluntary; instead, he argues that the trial judge coerced the plea through his participation in the process.   Specifically, Jabbaar argues that the trial judge's discussion of the evidence and the penalties attached to the counts coupled with his direct recommendation that Jabbaar "should consider a plea" had a coercive effect that rendered Jabbaar's plea involuntary.

**{¶25}** A defendant's plea must be knowingly, intelligently, and voluntarily made. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).   The enforcement of a

plea that does not satisfy all three of these criteria is unconstitutional under both the United States Constitution and the Ohio Constitution. *Id.*

{¶26} Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under the Ohio and United States Constitutions. *State v. Byrd*, 63 Ohio St.2d 288, 293-294, 407 N.E.2d 1384 (1980). Instead, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Id.* at 293. Ordinarily, a plea should be found involuntary and unconstitutional "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *Id.* at 293-294.

{¶27} Since the United States Supreme Court's decision in *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), however, it is important for a record to be established that a defendant is aware of a plea deal if one is presented to the defendant — something that may necessarily involve the participation of the trial judge by placing the plea deal on the record.

{¶28} Nonetheless, consistent with the Ohio Supreme Court's admonishment in *Byrd*, the role of the trial judge in any plea negotiation should be limited. We agree with Jabbaar that the discussion of the evidence to be presented at trial should be left to the prosecutor and defense counsel, and that it is the defense counsel's role — not the judge's — to explain the evidence to a defendant, give his opinion of the strength of the state's

case and the likelihood of conviction, and to tell the defendant that it would be better to plead than to go to trial. To the extent that Jabbaar implies that the trial judge performed in the function as Jabbaar's defense counsel, the detailed description of what occurred at the pretrial above negates such a claim.

**{¶29}** But we recognize that the trial judge's participation in this case is not the preferred practice and that, in some instances, the trial judge's comments raise concern. These comments, however, must not be considered in isolation. "Instead, we consider the record in its entirety to determine the voluntariness of the guilty plea." *State v. Finroy*, 10th Dist. No. 09AP-795, 2010-Ohio-2067, ¶ 7. After carefully scrutinizing the trial judge's participation and considering the totality of the record, we cannot say that the trial judge's involvement coerced Jabbaar's plea. The trial judge's comments taken in their entirety do not reveal a belief by the trial judge that a trial would be futile or that the judge would be biased against Jabbaar at trial.

**{¶30}** As Jabbaar even concedes, the trial judge's involvement in this case is qualitatively different than the trial court's involvement in *Byrd*. In *Byrd*, the trial judge solicited private meetings with the defendant's mother and sister and encouraged them to pressure Byrd to enter a guilty plea, indicating to them that Byrd would mostly likely get "the chair" if he went to trial. After speaking with his relatives, Byrd met with the judge in chambers, along with a sheriff's deputy, a probation officer, and an assistant prosecutor, where Byrd was neither provided counsel nor advised to obtain counsel. The trial judge then negotiated a plea bargain with the prosecutor, and, thereafter, informed

Byrd that it was a "pretty good deal." *Id.* at 290. The trial judge also enlisted the aid of the deputy sheriff, a friend of Byrd's family, in convincing Byrd to plead guilty.

{¶31} The Ohio Supreme Court concluded that the trial court judge's conduct, i.e., placing intense pressure on Byrd to accept the plea deal, in all probability led the defendant to believe that he would not receive a fair trial and that proceeding to trial was futile. *Id.* at 294. The court further noted that the effect of this pressure was further exacerbated by two other factors: (1) Byrd's methadone addiction, "twice noted by the judge, could easily have amplified the coercive effect of the judge's conduct"; and (2) Byrd never had the opportunity to consult with an attorney regarding the judge's remarks. *Id.*

{¶32} Unlike the situation in *Byrd*, Jabbaar was represented during all of the proceedings by counsel, who actively participated on Jabbaar's behalf. Further, the trial judge in this case did not coerce or negotiate a plea agreement for Jabbaar. Indeed, the record reveals that the trial judge insisted on Jabbaar taking additional time to consider the plea offer even after Jabbaar expressed a possible change of heart in going to trial. This is not a situation where the trial judge exerted pressure and his influence to induce a plea. Rather, the trial judge specifically instructed Jabbaar to take time to consider the plea deal, acknowledging that Jabbaar faced "a lot of time" if he pleaded guilty to the charges. The trial judge further addressed and resolved Jabbaar's stated concerns for having a fair trial, emphasizing that he had "absolutely no problem trying the case."

**{¶33}** As for the trial judge telling Jabbaar that he "should consider" the plea bargain, this is not the same as telling him "to take" the plea bargain. This comment must also be considered in the context of the entire proceedings, including the trial court's stated belief that Jabbaar should have additional time to think about the plea and that he could proceed to trial the following Monday if there was no plea. *See State v. Bizzell*, 2d Dist. No. 18055, 2000 Ohio App. LEXIS 4464 (Sept. 29, 2000) (rejecting defendant's claim that his plea was involuntary and noting that the trial court reminded the defendant that he could abandon his agreement and proceed to trial).

**{¶34}** We likewise find no fault in the trial judge's discussion of the possible sentence that Jabbaar faced if convicted on the counts of the indictment. There is no prohibition against a trial judge discussing the different penalties associated with the plea as opposed to the penalties if convicted of all the counts of the indictment. As this court has previously recognized, "when the trial court labors to make sure that a defendant understands the charges against him and the possible penalties, this assurance does not amount to an infringement on the constitutional right to a voluntary plea." *State v. Carmicle*, 8th Dist. No. 75001, 1999 Ohio App. LEXIS 5211, *6 (Nov. 4, 1999).

**{¶35}** Finally, our review is not limited to the pretrial discussion held on February 23, 2012; we must also consider the change of plea hearing held four days later. The trial judge did not accept Jabbaar's guilty plea until he fully advised him of his constitutional rights and complied with Crim.R. 11. The trial judge further reassured Jabbaar that he would bifurcate the sexually violent predator specification from the rape

counts so that the jury would not be aware of Jabbaar's prior conviction. The trial judge's detailed colloquy, coupled with his emphasis that Jabbaar would receive a fair trial, eliminates any doubt as to the voluntariness of Jabbaar's plea. Based on our review of the entire record, we simply cannot say that it was coerced.

{¶36} The sole assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY;
KATHLEEN ANN KEOUGH, J., DISSENTS WITH SEPARATE OPINION


KATHLEEN ANN KEOUGH, J., DISSENTING:

{¶38} Respectfully, I dissent.

**{¶39}** The parties agreed at oral argument that this was an unscheduled pretrial called by the judge. In fact, defense counsel told the judge that "[w]e were just surprised yesterday that we should be here today." After telling Jabbaar that "there's a huge difference between 15 years and life, or 13 years and life," the judge asked him if he understood that there was DNA evidence that linked him to the crime, "along with the gun that was recovered. Along with a witness who identifies you. Along with the videotape." When Jabbaar responded affirmatively, the judge asked him if he had considered a plea. After Jabbaar told the judge that he would "rather fight it," the judge questioned that decision, asking him, "Have you some explanation for your DNA being recovered from the victim when she went to the hospital"? When Jabbaar said no, and told the judge that he could not remember the incident, the judge told him, "Look, you know it seems to me that you certainly should consider a plea." Then, after discussing Jabbaar's pretrial haircut, the judge again questioned his decision to go to trial in light of the evidence against him:

> So you're telling me that despite the fact that you could be sentenced to a state penal institution for up to life on this offense, despite the fact that your DNA has been recovered from the victim's person in her body, that you wish to go to trial without any explanation for your DNA being there?

Later, when the prosecutor told the judge that "when I walk out of this courtroom, these counts are not open," the judge — addressing the prosecutor by his first name — encouraged him to keep the plea bargain offer open until trial.

**{¶40}** Reading this record as a whole, I would find the judge's statements so coercive as to render Jabbaar's plea involuntary. After engaging in a discussion of the

evidence against him, the court first asked Jabbaar if he had considered a plea and then later directly told him that he "certainly should" consider a plea. When Jabbaar said he wanted to go to trial, the judge twice questioned his decision, each time reminding him of the evidence against him. The judge also informed Jabbaar that he faced life in prison if he were convicted at trial, but advised him of the much lesser sentence that would be imposed if he were to plead guilty. Furthermore, the judge encouraged the prosecutor by first name, thereby implying a level of familiarity between the judge and prosecutor, to keep the plea offer open until trial, despite the prosecutor's advisement that the offer would be withdrawn after the pretrial if it was not accepted at that moment. And, as the majority concedes, the record reflects that the trial judge "insisted" that Jabbaar take additional time to consider the plea offer. Even then, after telling Jabbaar, that "if there's no plea, we'll go to trial," the judge reminded him that "the DNA evidence in this case, is generally speaking, Mr. Jabbaar, very highly regarded by juries." These statements, taken together, undoubtedly conveyed to Jabbaar that "the judge had joined with the prosecution in deciding that the appellant was guilty." *State v. Byrd*, 63 Ohio St.2d 294, 407 N.E.2d 1384 (1980).

{¶41} Despite the majority's conclusion that the trial judge merely "discussed" with Jabbaar the potential penalties that could be imposed after trial versus the penalties under the plea bargain offered by the state, the record reflects that the court did much more. The judge not only told Jabbaar that he was facing life in prison, he specifically told him there was "a huge difference between 15 years and life, or 13 years and life," and

that he "certainly should" consider a plea. The judge also twice questioned Jabbaar's decision to go to trial despite the evidence against him and "the fact that you could be sentenced to a state penal institution for up to life on this offense."

{¶42} The fact that the trial judge's involvement in this case was "qualitatively different" than the court's involvement in *Byrd* does not demonstrate that there was no coercion. A trial judge's conduct need not be as egregious as that in *Byrd* to constitute coercion. Likewise, the judge's compliance with Crim.R. 11 at the plea hearing is irrelevant to a finding of coercion. The damage was done by that point; the plea had already been coerced.

{¶43} I recognize that the judge's attempt to encourage Jabbaar to accept the plea deal was apparently well-meaning given the evidence against him and the potential for a long prison term if he were convicted of all the charges at trial. Nevertheless, I would find that the court's statements at the suddenly-called pretrial undoubtedly conveyed to Jabbaar that the judge believed he was guilty and trial would be "a futile exercise," thus coercing his plea. *Byrd*, 68 Ohio St.2d at 293, 407 N.E.2d 1384.

{¶44} Accordingly, I would vacate Jabbaar's conviction because his plea was not knowingly, voluntarily, and intelligently made.