[Cite as *State v. Kalvitz*, 2024-Ohio-392.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

GREGORY R. KALVITZ,

    DEFENDANT-APPELLANT.

CASE NO. 7-23-11

O P I N I O N

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

GREGORY R. KALVITZ,

    DEFENDANT-APPELLANT.

CASE NO. 7-23-12

O P I N I O N

---

**Appeals from Henry County Common Pleas Court**
**Trial Court Nos. 23 CR 0011 and 23 CR 0021**

**Judgment in Case No. 7-23-11: Affirmed in Part, Reversed in Part**

**Judgment in Case No. 7-23-12: Affirmed**

**Date of Decision: February 5, 2024**

---

APPEARANCES:

    *Jeffrey P. Nunnari* for Appellant

    *Gwen Howe-Gebers* for Appellee

**WALDICK, J.**

{¶1} In these consolidated appeals, defendant-appellant, Gregory R. Kalvitz ("Kalvitz"), appeals the July 5, 2023 judgments of conviction and sentence entered against him in the Henry County Court of Common Pleas, after Kalvitz entered negotiated pleas of guilty in two separate trial court cases. For the reasons that follow, we affirm in part and reverse in part in one of the cases, and affirm in the other case.

*Background*

{¶2} As reflected by filings in the records before us, these cases stemmed from an educational neglect case that was reported in late 2022 to the Henry County Job and Family Services agency, involving Kalvitz's young daughter, E.K. Because E.K. was not attending school as required, the agency began an investigation. Kalvitz refused to cooperate in that investigation, and threatened an agency caseworker with physical harm. Charges of Contributing to the Unruliness or Delinquency of a Child were subsequently filed against Kalvitz and E.K.'s mother, and both parents were court-ordered to produce the child to be interviewed by Job and Family Services, which the parents failed to do. After several unsuccessful attempts to get the parents to voluntarily produce the child, a judge granted temporary custody of E.K. to Job and Family Services and ordered that law enforcement take physical custody of the child to effectuate that temporary custody

order. Officers with the Henry County Sheriff's Office went to Kalvitz's residence and, while the child was not located there, evidence of drug manufacturing was discovered. A search warrant was obtained and a subsequent search of the property revealed a marijuana grow operation in Kalvitz's outbuilding. It was also discovered that Kalvitz had tampered with his electrical meter in order to avoid being charged for all the electricity he was using to grow the marijuana.

{¶3} In Case Number 7-23-11 (Case Number 23CR11 in the trial court), a five-count indictment was returned against Kalvitz on January 27, 2023, charging him as follows: Count 1 – Illegal Cultivation of Marijuana, a second-degree felony in violation of R.C. 2925.04(A) and (C)(5)(e); Count 2 – Having Weapons While Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(3); Count 3 – Interference with Custody, a first-degree misdemeanor in violation of R.C. 2919.23(A)(1); Count 4 – Menacing, a first-degree misdemeanor in violation of R.C. 2903.22(A) and (B); and Count 5 – Endangering Children, a third-degree felony in violation of R.C. 2919.22(B)(6). Count 1 also contained forfeiture specifications relating to a firearm, an ATV, two campers, and an assortment of other personal property.

{¶4} On February 1, 2023, an arraignment was held and Kalvitz pled not guilty to all counts in the indictment. At that time, the trial court formally appointed attorney Christopher Zografides to represent Kalvitz. The trial court also set discovery deadlines, scheduled a pretrial, and set a trial date for April 4, 2023.

{¶5} In Case Number 7-23-12 (Case Number 23CR21 in the trial court), a single-count indictment was filed against Kalvitz on February 22, 2023, charging him with Theft, a fifth-degree felony in violation of R.C. 2913.02(A)(1) and (B)(2).

{¶6} On March 1, 2023, an arraignment was held in the new case and Kalvitz pled not guilty to the indictment. As in the earlier case, the trial court formally appointed attorney Christopher Zografides to represent Kalvitz. The trial court also set discovery deadlines, scheduled a pretrial, and set a trial date for June 20, 2023.

{¶7} On March 6, 2023, Kalvitz waived his right to a speedy trial until June 20, 2023 in the first case. The jury trial in that case was then rescheduled for June 20, 2023.

{¶8} On March 14, 2023, Attorney Zografides filed a motion to withdraw as counsel in both cases, asserting that "[b]ased upon discussions as well as actions, an impasse has been reached which makes it impossible for counsel to continue representing the defendant." (Docket Nos. 23 and 15, respectively).

{¶9} On March 14, 2023, Kalvitz filed a pro se motion in the earlier case requesting that a number of specified things be provided to him in discovery, stating that he was now representing himself. On March 17, 2023, Kalvitz filed a similar motion in the second case.

{¶10} On March 17, 2023, the trial court granted Attorney Zografides' motions to withdraw as counsel, and appointed attorney Scott Coon to represent Kalvitz in both cases.

{¶11} On March 28, 2023, Attorney Coon filed a motion to withdraw as counsel in both cases, requesting leave to be excused from the cases "due to a conflict of interest that has arisen through his representation of the Defendant." (Docket Nos. 34 and 25, respectively).

{¶12} On March 30, 2023, the trial court granted Attorney Coon's motions to withdraw. The trial court then appointed attorney Danny Hill to represent Kalvitz in both cases.

{¶13} On April 11, 2023, the trial court filed a judgment entry in each case, noting that a pretrial had been held on April 10, 2023, at which time the defendant indicated he was going to file a motion to suppress. In those entries, the trial court scheduled a final pretrial and motion hearing for June 13, 2023 in both cases.

{¶14} On May 26, 2023, Attorney Hill filed a motion to suppress evidence in the second case.

{¶15} On June 2, 2023, Kalvitz filed a pro se, handwritten document titled "Conflict of Interest" in both cases. In that four-page document, Kalvitz first stated that his prior attorney had accused Kalvitz of making a death threat against the trial judge, although Kalvitz claimed the threat had really been made by another inmate in the jail. In that pro se document, Kalvitz then suggested that he should receive a lighter sentence for saving the life of the trial judge in light of the threats that had been made against her. In the document, Kalvitz stated that he knew where both the prosecutor and the judge lived, which Kalvitz alleged created a conflict of interest

that would deprive him of a fair trial. On that same date, Kalvitz also filed a pro se motion in both cases requesting that his bond be reduced. In yet a third pro se filing on June 2, 2023, Kalvitz requested that a different attorney, of his choosing, be appointed to represent him in the two pending cases.

{¶16} On June 8, 2023, Attorney Hill filed a motion to suppress evidence in the first case.

{¶17} On June 15, 2023, an order signed by Chief Justice Sharon Kennedy of the Ohio Supreme Court was filed in both cases, appointing a new judge to sit by assignment in the cases.

{¶18} On June 15, 2023, the trial court filed a judgment entry reflecting that a suppression hearing had been scheduled for June 13, 2023, but that the hearing was continued at the request of the defendant. The court ordered that a pretrial would be held on June 15, 2023 in order to determine whether Kalvitz would be retaining his own attorney or representing himself.

{¶19} On June 15, 2023, the parties again appeared in open court, and Kalvitz entered negotiated pleas of guilty that resolved both cases. Specifically, in the earlier case, Kalvitz pled guilty to Count 1 of the indictment, amended to a charge of Illegal Cultivation of Marijuana, a third-degree felony, and he pled guilty to Counts 4 and 5 as originally indicted. Kalvitz also admitted to the facts alleged in the forfeiture specifications in Count 1, agreeing to forfeit the specified property. In exchange, the state agreed to dismiss Counts 2 and 3 in that indictment. In the

second case, Kalvitz pled guilty to the single-count indictment. Pursuant to the terms of the negotiated plea arrangement, the parties also agreed to a two-year prison term on Count 1 in the first case, with the sentences on all other counts to be served concurrently with that two-year term. The State of Ohio also agreed to not recommend a prison sentence in the case pending against Jessica Downing, Kalvitz's co-defendant and the mother of his child.

{¶20} A sentencing hearing was then held in both cases on that same date. Pursuant to the sentencing agreement reached by the parties, Kalvitz was sentenced in the first case to two years in prison on Count 1, to six months in jail on Count 4, and to one year in prison on Count 5, with those sentences to be served concurrently with each other, and also concurrent with the sentence in the second case, in which Kalvitz was sentenced to a 12-month prison term. In the earlier case, it was also ordered on the record that Kalvitz be sentenced to a mandatory term of post-release control of not less than one and no more than three years. In the July 5, 2023 entry journalizing the conviction and sentence in that case, the trial court ordered that "[t]he defendant shall be subject to post release control of up to three (3) years [.]". (Docket No. 60).

{¶21} On July 18, 2023, Kalvitz filed a pro se notice of appeal in both cases. On that same date, the trial court filed an order appointing appellate counsel to represent Kalvitz in the two cases. Kalvitz's appeals were subsequently consolidated by this Court for purposes of briefing and argument.

On appeal, Kalvitz raises two assignments of error for our review.

**First Assignment of Error**

**Appellant's pleas were not knowingly, intelligently, and voluntarily entered.**

**Second Assignment of Error**

**Appellant's sentences are contrary to law.**

*First Assignment of Error*

**{¶22}** In the first assignment of error, Kalvitz argues that his guilty pleas in the two cases were not knowing, intelligent, and voluntary. Specifically, Kalvitz asserts that remarks made by the trial judge sitting by assignment in the cases resulted in coercing Kalvitz to plead guilty, thereby negating the voluntariness of the guilty pleas.

**{¶23}** With regard to the voluntariness of a guilty plea when allegations are made on appeal that the plea resulted from coercion or improper pressure on the part of the trial court, this Court recently noted in *State v. Bodine*, 3d Dist. Hardin No. 6-23-03, 2023-Ohio-2197, as follows:

> "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). A plea, if coerced or induced by promises or threats renders the plea involuntary. *State v. Lawson*, 3d Dist. Seneca No. 13-18-20, 2018-Ohio-4922, 2018 WL 6446476, ¶ 20.

> With respect to a judge's participation in the plea-bargaining process, the Supreme Court of Ohio has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge

should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292, 407 N.E.2d 1384 (1980). Judicial participation is strongly discouraged, but it does not render a plea *per se* involuntary; rather, the "ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea." *Lawson* at ¶ 20. We consider the record in its entirety to determine the voluntariness of the plea. *Id.* citing *State v. Jabbaar*, 8th Dist. Cuyahoga, 2013-Ohio-1655, 991 N.E.2d 290, ¶ 29.

*Id.*, at ¶¶ 7-8.

**{¶24}** In the instant case, we begin our analysis of the first assignment of error by reviewing the proceedings, and specifically the interactions between the trial court and Kalvitz, that preceded the guilty pleas at issue.

**{¶25}** The record reflects that on June 13, 2023, the parties were in court for a previously scheduled hearing on the motions to suppress filed by Kalvitz. Prior to commencing the suppression hearing, the trial judge introduced himself and noted the procedural status of the cases on the record. The trial court then informed Kalvitz that the court was not inclined to accept a plea agreement once a suppression hearing had been held, which was apparently also the position of the State of Ohio. Kalvitz responded by saying that he was not ready to move forward with the suppression hearing. Kalvitz then went on at great length, claiming that he had not had sufficient contact with his court-appointed attorneys, that he had been unable to subpoena the officers and view the evidence that he had requested in his prior pro se motions, that his family had not been able to reach his attorney, that he was being denied effective counsel, and that the trial court was "withholding exculpatory

evidence in this case, violating the Brady Rule." (6/13/23 Tr., 3). Kalvitz concluded his harangue by asking to represent himself, or to be released from jail so that he could retain private counsel.

{¶26} In response, the trial court noted that Kalvitz had so far been represented by three different attorneys, that his actions and statements reflected an attitude that may account for the difficulties with his attorneys, and that self-representation was very rare. Kalvitz repeated his request for time to explore retaining a lawyer, which the trial court then granted, ordering that the hearing be continued. At that time, Kalvitz's counsel noted for the record that he had met with Kalvitz in the jail extensively, and discussed with him the motion to suppress. Kalvitz's attorney stated that he had explained to Kalvitz that the issues Kalvitz was concerned with were trial issues, and that Kalvitz was seeming to have a hard time understanding that. Counsel further noted that he had, in fact, spoken with his client's father on the phone and explained the same things to him.

{¶27} Kalvitz proceeded to again speak at length, asserting that he was unprepared to handle his own case and arguing that he needed to be released on bond in order to obtain counsel and prepare for the suppression hearing. The prosecution then lodged an objection as to any reduction in bond, noting that the state had reason to believe that Kalvitz had been violating the order that he have no contact with his codefendant, and asserting that Kalvitz was a flight risk and had attempted to flee before. Kalvitz argued in response that he had not tried to flee,

that he simply had tried to take his daughter out of county to find a different children's services agency and that he had always intended to get back in contact with the courts locally. He additionally noted that he had not taken the child out of state, but just to Cleveland. The trial court then stated that the bond would not be modified and that "[i]f I were to address the bond, I'd probably increase it, based on your attitude." (6/13/23 Tr., 12). The trial court concluded the proceeding by scheduling a status hearing in the cases for two days later, and urged caution to Kalvitz on the issue of self-representation, explaining several potential problems that can arise and telling Kalvitz he would be advised further about those issues at the next hearing, should he still wish to represent himself.

{¶28} On June 15, 2023, the parties were back in court for a pretrial conference, which began by the trial judge asking Kalvitz if different counsel had been hired, to which Kalvitz replied, "not yet." (6/15/23 Tr., 2). The trial court asked if it was still Kalvitz's desire to represent himself or if he was willing to proceed with his present counsel, and Kalvitz stated, "As of this moment I'm going to proceed and see how it goes." (*Id.*). The trial court indicated that was fine, and explained that they now needed to reschedule the suppression hearing and set a new trial date.

{¶29} After scheduling those dates, the trial court addressed Kalvitz regarding the status of plea negotiations in the cases, encouraging him to weigh the two-year sentence that he had been offered by the prosecution pursuant to a

negotiated plea agreement against the potential sentence of ten or twelve years that he might face if convicted following trial, once all the facts were known. Kalvitz replied, "I think we can do a little better than that Your Honor." (6/15/23 Tr., 4). The trial court then reiterated the notice that had been given to Kalvitz at the last pretrial concerning the fact that no plea deal would be accepted after that day.

{¶30} In response to that, Kalvitz began lodging another litany of complaints about the charges against him, the investigation relating to his daughter, and stated that the whole affair was a malicious action on the part of the sheriff who wanted a reason to check Kalvitz's residence for marijuana plants. The trial judge stopped Kalvitz, saying the court had heard enough, but Kalvitz continued to interrupt the court. The trial judge warned Kalvitz to stop speaking out of turn, telling him to speak with his attorney, who could then speak to the court. Kalvitz responded to that by saying that he wanted to address the conflict of interest of the prosecutor due to the death threat against her, arguing that the prosecutor had a conflict of interest and needed to step off the case because Kalvitz knew where the prosecutor lived. Kalvitz pointed out that the prior judge handling the case had stepped down for the same reason, after a death threat against her had been made. Kalvitz then asserted that the prosecutor had a family member in Lucas County, which he alleged would pose some type of conflict with the visiting judge, who was also from that area. Kalvitz then began arguing that because the wife of the visiting judge was the

Lucas County Prosecutor, that presented another conflict of interest in the case and that a change of venue was necessary.

{¶31} The trial court explained to Kavlitz that it was well established that the judge did not have a conflict of interest due to his wife being a prosecutor unless she was involved in a case over which the judge was presiding. The trial court explained to Kalvitz that, in any event, the procedure would be to file a motion with the Ohio Supreme Court and the Chief Justice then would review the conflict issue. The trial court then added, "I don't think [the Chief Justice] will, but I would hope she'd remove me so you could have a different judge, because I'm already tired of this case and I've only been in court twice[.]" (6/15/23 Tr., 7). Kalvitz began speaking again of the death threats made against the prior judge on the case and the current prosecutor at their residences, but the trial court asked Kalvitz to speak no further at that point, and adjourned the proceedings until the suppression hearing could be held on July 28, 2023. Court was recessed at 10:39 a.m.

{¶32} The record next reflects that the trial court unexpectedly reconvened in the two cases at 11:57 a.m. on that same date, June 15, 2023. The trial judge noted for the record that he had been called back after leaving the building earlier in the morning, and was told that there had been a potential negotiated plea or pleas discussed. The trial court asked if someone could tell the court what the potential plea arrangement was. The prosecutor then set forth the details of the negotiated

pleas that had been worked out in the two cases, and defense counsel confirmed the accuracy of that recitation.

{¶33} The trial court then addressed Kalvitz at length, confirming that he was 43 years old, had graduated high school, and could read and write the English language. The trial court outlined in detail the charges to which Kalvitz would be pleading guilty, the potential penalties, the jointly stipulated sentence that would be imposed pursuant to the plea arrangement, and the other consideration being granted by the prosecution in exchange for the guilty pleas, all of which Kalvitz readily indicated that he understood. The trial court explained the constitutional rights Kalvitz would be waiving by pleading guilty and Kalvitz expressed his understanding of those issues. Kalvitz was specifically asked, "Now other than what we have talked about here, has there been any other promises or threats made to you to get you to enter these pleas of guilty today?", and Kalvitz replied, "No, just the deal we spoke about." (6/15/23 Tr., 14-15).

{¶34} At the trial court's request, Kalvitz set forth the facts upon which his pleas of guilty were based, with the prosecutor adding a couple details for clarification. The trial court then reviewed the written plea of guilty forms, which Kalvitz acknowledged having previously reviewed with his attorney and having signed. After Kalvitz indicated that he had no questions concerning the negotiated pleas of guilty, the trial court accepted the pleas. At the request of defense counsel, because of the agreed-upon sentence, the cases then proceeded directly to a joint

sentencing hearing. After both defense counsel and Kalvitz were permitted to, and did, make statements relating to sentencing, the trial court imposed the agreed-upon two-year aggregate prison sentence in the cases.

{¶35} On appeal, Kalvitz asserts that the trial court's participation in the plea negotiation process, combined with disdain displayed by the trial judge toward Kalvitz, served to coerce the guilty pleas in these cases. After carefully examining the trial judge's role in the proceedings and considering the totality of the record, we find that the trial court's conduct did not coerce Kalvitz's guilty pleas.

{¶36} With regard to what Kalvitz characterizes as "disdain" toward him by the trial court, the record reflects that the trial judge was perhaps at times frustrated with Kalvitz, particularly when Kalvitz appeared at the previously scheduled June 13, 2023 suppression hearing and indicated that he was not prepared to go forward because he wanted yet another new attorney or, alternatively, to represent himself. While the trial court did note at that time that Kalvitz was "difficult" and seemed to have an "attitude", such comments were not an inaccurate evaluation of Kalvitz's ongoing issues with his appointed counsel and reflect a no-nonsense approach by the trial court in handling certain comments and demands by Kalvitz that were patently unreasonable. More importantly, notwithstanding the trial court's frank assessment of the situation, the court granted Kalvitz the requested continuance of the suppression hearing and appropriately urged caution concerning self-representation.

**{¶37}** As to Kalvitz's claim regarding the trial court's "participation" in the plea negotiations, the record reflects that such involvement was primarily limited to informing Kalvitz that there was a deadline for accepting a plea agreement and in discussing the potential sentence that would result from entering a negotiated plea. The trial court never expressly discouraged a trial, nor did the court indicate that a trial would be futile or unfair.

**{¶38}** In evaluating Kalvitz's arguments on appeal, we note that trial courts in Ohio, unlike federal courts and many courts in other states, may participate to some extent in plea negotiations. *State v. Elliott*, 1st Dist. Hamilton No. C-190430, 2021-Ohio-424, ¶ 9, citing *State v. Vari*, 7th Dist. Mahoning No. 07-MA-142, 2010-Ohio-1300, ¶ 20 ("The Federal Rules of Criminal Procedure and a number of courts in other states prohibit participation by a judge in plea bargain negotiations."); *compare State v. Byrd*, *supra*, 63 Ohio St.2d at 293 ("Although this court strongly discourages judge participation in plea negotiations, we do not hold that such participation per se renders a plea invalid under the Ohio and United States Constitutions."). Thus, a trial court may weigh in on a material term of a plea agreement. *State v. Elliott*, *supra*, citing *State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882, ¶¶ 8–13 (affirming the trial court's participation in plea negotiation where it was involved in the discussions and promised not to impose a prison sentence).

{¶39} Kalvitz argues that the trial judge himself extended a plea offer to Kalvitz, based on the trial court commenting at the start of the June 15, 2023 status conference that, "[B]efore I knew all of the facts I overruled the prosecutor the other day and made an offer to you, of two years. If you're convicted of all of these things I'm not sure what the sentence is and again I'm not sure of all of the evidence but some of the evidence has been disclosed in the motion to suppress. Um, you could be looking at ten or twelve years." (6/15/23 Tr., 3). While the court's comment could have perhaps been more precisely worded, it is clear from the overall record that the trial judge was merely explaining to Kalvitz that, if negotiated pleas were entered, the court was inclined to impose a two-year sentence, even if the prosecutor had initially advocated for more time in pretrial discussions between counsel for the parties and the court.

{¶40} Likewise, while Kalvitz suggests that the trial court put undue pressure on him to plead guilty by referencing the potential sentences he faced should he proceed to trial, "[t]here is no prohibition against a trial judge discussing the different penalties associated with the plea as opposed to the penalties if convicted of all the courts of the indictment." *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-1655, ¶ 34. "'[W]hen the trial court labors to make sure that a defendant understands the charges against him and the possible penalties, this assurance does not amount to an infringement on the constitutional right to a voluntary plea.'" *Id.*,

quoting *State v. Carmicle,* 8th Dist. No. 75001, 1999 WL 1000525, *3 (Nov. 4, 1999).

**{¶41}** We also consider the voluntariness of the guilty pleas here in light of the change of plea hearing held on June 15, 2023. The record of that proceeding reflects, as noted above, that the trial judge had left the courthouse after concluding the pretrial status conference held on the record earlier that morning, and was then called upon to return because a negotiated plea agreement had been reached by the parties in the court's absence. After court reconvened later that morning, but prior to accepting Kalvitz's guilty pleas, the trial court fully complied with Crim.R. 11 and advised Kalvitz of the constitutional rights he would be waiving by pleading guilty. The record of the change of plea hearing reflects no hesitation on Kalvitz's part in entering the guilty pleas at that hearing. Further, Kalvitz was specifically asked whether the guilty pleas were the result of any promises or threats having been made against him, and Kalvitz indicated that the only inducement for his guilty pleas was the negotiated plea agreement itself.

**{¶42}** Finally, we note that Kalvitz was represented by counsel at all times relevant to his claims here, and that the negotiated pleas of guilty entered by Kalvitz were highly favorable to him.

**{¶43}** In summary, based on our review of the entire record, we find nothing demonstrating that the trial court's conduct coerced or undermined the voluntariness of Kalvitz's guilty pleas.

{¶44} The first assignment of error is overruled.

*Second Assignment of Error*

{¶45} In the second assignment of error, which relates solely to Case Number 7-23-11, Kalvitz asserts that the trial court erred in the term of post-release control that was imposed as part of the sentence. Specifically, Kalvitz argues that the imposition of up to three years of post-release control renders his sentence contrary to law, as the controlling statute provides for two years of post-release control for the offenses of which Kalvitz was convicted. Upon review, we find that Kalvitz is correct.

{¶46} The imposition of post-release control is governed by R.C. 2967.28. Under that statute, post-release control may be either mandatory or discretionary, and the length of the post-release control term varies, depending upon the offense for which an offender is being sentenced.

{¶47} R.C. 2967.28(B) provides for the imposition of mandatory post-release control in certain instances, stating that "[e]ach sentence to a prison term * * * for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment." R.C. 2967.28(B) then further sets forth the length of the term of

mandatory post-release control that must be imposed for offenses of the level or type specified. *See* R.C. 2967.28(B)(1) through (B)(4).

**{¶48}** R.C. 2967.28(C) provides for the imposition of discretionary post-release control in certain other instances, stating that "[a]ny sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (4) of this section shall include a requirement that the offender be subject to a period of post-release control of up to two years after the offender's release from imprisonment, if the parole board * * * determines that a period of post-release control is necessary for that offender."

**{¶49}** In the case at issue, Kalvitz was convicted and sentenced for two felonies, Illegal Cultivation of Marijuana and Endangering Children, both being felonies of the third degree. However, as neither of those third-degree felony offenses for which Kalvitz was sentenced is an offense of violence as defined in R.C. 2901.01(A)(9) or a felony sex offense, R.C. 2967.28(B) is not applicable here. Accordingly, Kalvitz was subject to being sentenced to a discretionary term of post-release control of up to two years pursuant to R.C. 2967.28(C), not the mandatory term of post-release control of up to three years that the trial court imposed.

**{¶50}** The second assignment of error is sustained as to Case Number 7-23-11.

-20-

*Conclusion*

**{¶51}** In Case Number 7-23-11, having overruled the first assignment of error but sustained the second assignment of error, the judgment of the Henry County Court of Common Pleas is affirmed in part and reversed in part. The case is remanded for resentencing, limited to the proper imposition of post-release control. See *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238.

**{¶52}** In Case Number 7-23-12, having found no error in the particulars assigned and argued, the judgment of the Henry County Court of Common Pleas is affirmed.

*Case Number 7-23-11:*
*Affirmed in part,*
*reversed in part.*

*Case Number 7-23-12:*
*Affirmed.*

**WILLAMOWSKI, P.J., and ZIMMERMAN, J., concur.**