[Cite as *State v. Meadows*, 2023-Ohio-1572.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111950 |
| v. | : | |
| REGINALD MEADOWS, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 11, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-666153-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brittany Fletcher, Assistant Prosecuting Attorney, *for appellee.*

John T. Forristal, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Reginald Meadows ("Meadows"), was involved in a police chase following a traffic stop, which resulted in Meadows crashing into two vehicles. He appeals from his guilty plea to failure to comply, aggravated

vehicular assault, carrying a concealed weapon, trafficking, drug possession, and possessing criminal tools, arguing that the trial court's participation in his plea rendered his plea invalid.

## I. Facts and Procedural History

{¶ 2} In September 2021, the Independence Police stopped Meadows for failing to maintain his lane of travel. As the police officer was in his cruiser running Meadows's identification, which revealed that Meadows had active warrants and a suspended driver's license, Meadows took off in his vehicle at a high rate of speed and a pursuit ensued. Meadows was speeding, ran through red lights, and drove against traffic on SR 21 in Independence. Meadows crashed into a vehicle as he approached the intersection of SR 21 and Rockside Road, causing the vehicle to flip on its side. The driver of this vehicle had to be life-flighted from the scene to the hospital. The driver sustained several injuries including a dislocated shoulder, ten broken ribs, and a punctured lung. Meadows's vehicle then crashed into another vehicle, which ended the pursuit. The driver of this vehicle suffered lower back spasms and soreness, and her 5-year-old grandson sustained no physical injury but was emotionally traumatized. The police search of Meadows's vehicle revealed a loaded firearm, 1.34 grams of meth, and drug-related tools.[1]

{¶ 3} As a result of this incident, Meadows was charged in a nine-count indictment in December 2021. Counts 1-3 charged him with failure to comply, with

---

[1] The above facts were set forth by the state at Meadows's August 2022 sentencing hearing.

both a one-year firearm specification and a forfeiture of weapon clause attached to each count. These counts also carried furthermore clauses stating that the operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property (Counts 1 and 2) and the offender was fleeing immediately after the commission of a felony (Count 3). Count 4 charged him with aggravated vehicular assault, with both a one-year firearm specification and a forfeiture of weapon clause attached. Count 5 charged him with carrying a concealed weapon, with a forfeiture of weapon clause attached and a furthermore clause stating that the weapon involved was a firearm that was either loaded or for which the offender had ammunition ready at hand. Count 6 charged him with improperly handling firearms in a motor vehicle, with a forfeiture of weapon clause attached. Count 7 charged him with trafficking, with both a one-year firearm specification and three forfeiture clauses attached. Count 8 charged him with drug possession, with both a one-year firearm specification and three forfeiture clauses attached. Count 9 charged him with possessing criminal tools, with a furthermore clause and three forfeiture clauses attached.

{¶ 4} The matter was set for trial on July 6, 2022. The day before, Meadows was in court with his defense counsel and the prosecutor preparing for trial. The parties went on the record, and defense counsel explained to the court that there may be an opportunity to resolve the matter and Meadows was concerned with the mandatory nature of the penalties. During this discussion, the trial court advised Meadows that the aggravated vehicular assault count carried a mandatory prison

term from 12 to 60 months, in 6-month increments.  The court also stated to Meadows that "it's a tough decision" to decide to plea and he should discuss his options with defense counsel, who was very experienced.  (July 5, 2022, tr. 9.)

{¶ 5}  It was the court's understanding that there is film of the incident, and the court stated to Meadows that "that type of stuff weighs very heavily on a jury." (July 5, 2022, tr. 9.) The court further stated that Meadows faced nine charges, some of which are mandatory consecutive so that could "add up to a lot of time."  (July 5, 2022, tr. 6.) The court also stated to Meadows that the "jury's not going to see it the same way you do.  They just won't" and, with all the charges, defense counsel "would have to throw a no hitter here for there not to be some possible prison time, possibly substantial time."  (July 5, 2022, tr. 6-7.)  The court also advised Meadows, "I don't know what the charges are.  You know, I don't get into the plea too much because that's between you and the State, and I don't want that to interfere with my judgment.  We'll put the plea on the record in a second here, and I'll step out while it's going on."  (July 5, 2022, tr. 8.)

{¶ 6}  After defense counsel and the state discussed the plea, the trial judge then reentered the courtroom.  Defense counsel advised the court that Meadows wanted to resolve the matter through the state's plea offer.  The trial court then had the following exchange with Meadows:

[COURT]:  You wish to plea?

[MEADOWS]:  Unfortunately.

[COURT]:  Pardon me?

[MEADOWS]: Yes. Yes. Unfortunately, yes.

[COURT]: Well, you know, like I said before, you know, I wouldn't want to be in your situation. It's a tough decision to make. I understand that. But, you know, a decision needs to be made.

You can go to a jury, but, you know, they're not going to see it your way. I can guarantee you that. All right? Do you want to proceed, or do you want to think about it?

[MEADOWS]: It's either go to trial tomorrow or plead out today?

[COURT]: Uh-huh.

[MEADOWS]: Plead out today.

[COURT]: All right.

(July 5, 2022, tr. 11-12.)

{¶ 7} The trial court then proceeded with the plea colloquy advising Meadows of his rights in accordance with Crim.R. 11. While discussing his rights, the court asked Meadows if he was satisfied with the services of his lawyer. Meadows responded:

[MEADOWS]: I mean, I really didn't * * * understand it all, to go through all those charges, but it is what it is now. I'm at the end of the road, so.

* * *

Because I was told something else at the beginning, before this, before this case. I was told I wasn't going to be pleading out to all these charges. But it is what it is now. It's either that or trial, so it's like — I'm not saying I'm forced to do it, but it's basically like my [sic.] is to the wall now, so.

[COURT]: Mr. Meadows, you know, there are no rabbits to be pulled out of a hat here. All right? Do you understand what I mean?

[MEADOWS]: Yes, sir. Yes, Your Honor.

[COURT]: I don't know all the facts here. * * * And there are no miracles. * * * The plain reality is there are a lot of serious charges in this case. You know, in this incident people were hurt. And, you know, the police in the situation are driving this. This is a situation where you should have given up and nothing like this would have happened. Nothing like this would have happened. You would not have any of these mandatory charges. You wouldn't have had any of these charges that were mandatory charges, if you would just given up.

[MEADOWS]: These charges could be run consecutive?

[COURT]: Yes. They could be. * * * I'm going to go through all that. Because my job right now is to give you the worst possible thing that can happen so that you know the worst possible thing that can happen to you. You know, so that you can make a knowing and intelligent decision. I don't sugarcoat stuff. You know, I don't just tell people the least possible plea. I tell them the worst possible plea so you can have a full understanding.

* * *

All right? Do you want to keep going? * * * I'm going to ask you some questions again.

* * *

[COURT]: So are you satisfied with the services of your lawyer[?]

[MEADOWS]: Yes.

(July 5, 2022, tr. 17-20.)

{¶ 8} Meadows pled guilty to six charges: an amended count of failure to comply with forfeiture specifications (Count 1), an amended count of aggravated vehicular assault with forfeiture specifications (Count 4), carrying a concealed weapon with forfeiture specifications (Count 5), an amended count of trafficking (Count 7), drug possession with a one-year firearm specification and forfeiture specifications (Count 8), and an amended count of possessing criminal tools with

forfeiture specifications (Count 9). The remaining counts were nolled, and the remaining firearm specifications were dismissed. The court found that the plea was knowingly, intelligently, and voluntarily made and referred Meadows to the psychiatric clinic and the probation department for a presentence-investigation report.

{¶ 9} The matter resumed in August 2022 for the sentencing hearing. At the hearing, the state recited the facts surrounding the incident and played the officer's dashcam video, over an objection by Meadows. The state also read letters from the three victims. Defense counsel spoke on Meadows's behalf. Meadows also spoke to the court and apologized for his actions. The court then sentenced Meadows to

> a prison sentence at the Lorain Correctional Institution of 92 month(s).
>
> Count 1: F3, 36 month(s), consecutive with count 4; up to 2 years of PRC at the discretion of the parole board.
>
> Count 4: F3, 36 month(s), (this is mandatory time); a mandatory minimum 1 year, up to a maximum of 3 years.
>
> Counts 5, 7: F4, 12 month(s), Counts 5 and 7 to run concurrent with each other, but consecutive to Counts 1 and 4; up to 2 years of PRC at the discretion of the parole board.
>
> Count 7: F4, 12 month(s), Counts 5 and 7 to run concurrent with each other, but consecutive to Counts 1 and 4; up to 2 years of PRC at the discretion of the parole board.
>
> Counts 8, 9: F5, 8 month(s), Counts 8 and 9 are to run concurrent with each other but consecutive to Counts 1, 4, 5 and 7; up to 2 years of PRC at the discretion of the parole board.

(Judgment Entry, Aug. 17, 2022.)

{¶ 10} It is from this order that Meadows now appeals, raising the following two assignments of error for review:

> **Assignment of Error One:** Mr. Meadows' guilty pleas were not entered knowingly, intelligently, or voluntarily because the trial court's participation in the plea bargaining process undermined the voluntariness of the pleas.

> **Assignment of Error Two:** The trial court erred when it overruled defense counsel's objection to the playing of the dashcam video at the sentencing hearing.

## II. Law and Analysis

### A. Guilty Plea

{¶ 11} In the first assignment of error, Meadows challenges his plea, arguing that it was not knowingly, intelligently, or voluntarily made because trial court's participation in the plea-bargaining process undermined his decision and led him to believe he would not have a fair trial. He argues that several of the court's statements, made on the eve of his jury trial, were improper and coerced him to abandon his plan to take the case to trial.

{¶ 12} It is well-established that for a defendant's plea to be valid, it must be knowingly, intelligently, and voluntarily made. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under the Ohio and United States Constitutions. *State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980). Instead, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's

guilty plea." *Id.* at 293. A plea should be found involuntary and unconstitutional "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *Id.* at 293-294.

{¶ 13} Meadows, relying on *Byrd*, directs us to the following statements made by the trial court, arguing that these statements indicated that the court would be biased against him and felt that going to trial was a "futile exercise": (1) "a jury's not going to see it the same way you do. They just won't"; (2) "So your attorney would have to throw a no hitter here for there not to be some possible prison time, possibly substantial time"; (3) "they thought the jury would see it their way. And they didn't"; and (4) "You can go to a jury, but, you know, they're not going to see it your way. I can guarantee you that. All right?"

{¶ 14} The state argues that Meadows is mislabeling the court's legal requirement to ensure that accurate information is conveyed so that he can fully understand the consequences of his decision and enter a valid plea as "coercion." In support of its position, the state relies on *State v. Jones*, 8th Dist. Cuyahoga No. 107561, 2019-Ohio-2571, which cites to *State v. Jabbaar*, 2013-Ohio-1655, 991 N.E.2d 290 (8th Dist.). In *Jones*, the defendant argued that the trial court's participation in the plea-bargaining process undermined his decision and led him to believe he would not obtain a fair trial. In *Jones*, the trial court stated that Jones may not leave prison, depending upon the length of his jail time, and the trial court

assured Jones the victim would testify against him even though he could not say what her testimony would be. *Id.* at ¶ 21-22.

> {¶ 15} We stated that while the trial court's comments
>
>> are disquieting and the trial court's participation is similar to the trial court's participation in the *Jabbaar* case in that such participation is not the "preferred practice," we do not look at the trial court's comments in isolation, but look at the record in its entirety to determine the voluntariness of the guilty plea. *Id.* In reviewing the trial court's participation and the totality of the record, the trial court did not create and present the plea offer and the prosecutor had input in the plea offer.

*Id.* at ¶ 23. We found that in looking at the record in its entirety, the trial court's comments did not cause Jones to believe he would not receive a fair trial or a fair sentence after trial. *Id.*

{¶ 16} In *Jabbaar*, the defendant argued that the trial court's discussion of the evidence and the penalties attached to the counts coupled with his direct recommendation that the defendant "should consider a plea" had a coercive effect that rendered his plea involuntary. *Id.*, 2013-Ohio-1655, 991 N.E.2d 290, at ¶ 24. We recognized that the trial judge's participation in *Jabbaar* was not the preferred practice and that, in some instances, the trial judge's comments raised concern. *Id.* at ¶ 29. We found, however, that these comments must not be considered in isolation. *Id.* "'Instead, we consider the record in its entirety to determine the voluntariness of the guilty plea.'" *Id.*, quoting *State v. Finroy*, 10th Dist. Franklin No. 09AP-795, 2010-Ohio-2067, ¶ 7.

{¶ 17} The record in *Jabbaar,* 2013-Ohio-1655, 991 N.E.2d 290, demonstrated that (1) the defendant was represented during all of the proceedings by counsel, who actively participated on the defendant's behalf; (2) the trial court did not coerce or negotiate a plea agreement for the defendant; rather the trial court insisted on the defendant taking additional time to consider the plea offer even after the defendant expressed a possible change of heart in going to trial; and (3) telling the defendant that he "should consider" the plea is not the same as telling him "to take" the plea. *Id.* at ¶ 32-33. These factors, and the trial judge fully advising the defendant of his constitutional rights so as to comply with Crim.R. 11, led this court to determine the plea was not coerced. *Id.* at ¶ 35.

{¶ 18} In *Jabbaar*, we distinguished *Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384, noting that the trial judge in *Byrd*

> solicited private meetings with the defendant's mother and sister and encouraged them to pressure Byrd to enter a guilty plea, indicating to them that Byrd would mostly likely get "the chair" if he went to trial. After speaking with his relatives, Byrd met with the judge in chambers, along with a sheriff's deputy, a probation officer, and an assistant prosecutor, where Byrd was neither provided counsel nor advised to obtain counsel. The trial judge then negotiated a plea bargain with the prosecutor, and, thereafter, informed Byrd that it was a "pretty good deal." *Id.* at 290. The trial judge also enlisted the aid of the deputy sheriff, a friend of Byrd's family, in convincing Byrd to plead guilty.

*Id.* at ¶ 30.

{¶ 19} We likewise find the situation in *Byrd* distinguishable and find that the instant case is analogous to *Jabbaar* and *Jones,* 8th Dist. Cuyahoga No. 107561, 2019-Ohio-2571. Although the above comments by the trial court that Meadows

emphasizes are concerning, and the trial court's participation is not the "preferred practice," we do not look at these comments in isolation, but look at the record in its entirety to determine the voluntariness of the guilty plea.

{¶ 20} Here, all of the trial court's statements, but for the last statement, were said while Meadows was discussing the mandatory nature of his sentence and before the trial judge left the courtroom so that Meadows could discuss the plea. The trial court did not coerce or negotiate a plea agreement; rather, the plea agreement was brought to the court's attention and the court's statements were direct responses to Meadows's sentencing questions. The court acknowledged that "it's a tough decision" to decide to plea and encouraged Meadows to discuss the matter with defense counsel, whom the court acknowledged was experienced. Prior to leaving the courtroom, the trial judge advised Meadows that he does not get too involved with the plea because that is between him and the state. The judge stated, "I don't want that to interfere with my judgment." (July 5, 2022, tr. 8.). The trial judge then left the courtroom while the terms of the plea were discussed by the parties.

{¶ 21} This is not a situation where the trial court exerted pressure and influence to induce a plea. Rather, the trial judge specifically told Meadows that "I don't sugarcoat stuff" and it is his job to give Meadows the worst possible thing that can happen so that Meadows could make a knowing and intelligent decision. These factors, and the trial judge fully advising Meadows of his constitutional rights in compliance with Crim.R. 11, lead this court to determine Meadows's plea was not coerced.

{¶ 22} Thus, after reviewing the trial court's participation and considering the totality of the record, we cannot say that the trial court's involvement coerced Meadows's plea. The trial court's comments taken in their entirety do not reveal a belief by the court that a trial would be futile or that the judge would be biased against Meadows at trial.

{¶ 23} Accordingly, the first assignment of error is overruled.

## B. Dashcam Video at Sentencing

{¶ 24} In the second assignment of error, Meadows argues that the court erred when it allowed the state to play the dashcam video of the police chase at sentencing. Meadows contends that, under Evid.R. 403, the dashcam video inflamed the passion of the trial court and impermissibly impacted his sentence.

{¶ 25} We note that the rules of evidence do not apply at sentencing hearings. *State v. Echols*, 8th Dist. Cuyahoga No. 104483, 2017-Ohio-1360, ¶ 9, citing *State v. Williams*, 8th Dist. Cuyahoga No. 98934, 2013-Ohio-2201. The trial court is permitted to consider any reliable evidence in the record when sentencing a defendant. *Williams* at ¶ 18, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 84582, 2005-Ohio-3427; *see also State v. Wagner*, 8th Dist. Cuyahoga No. 109678, 2023-Ohio-1215, ¶ 34.

{¶ 26} Here, we find that the officer's dashcam video of Meadows fleeing from the police, crashing into two vehicles, and causing harm to three individuals is reliable evidence that a trial court can consider at the time of sentencing. There is no evidence in the record supporting Meadows's contention that this video inflamed

the trial court and impermissibly impacted his sentence. Rather, at the sentencing hearing, the court advised Meadows that it gave him 12 months in prison on the fourth-degree felonies, when Meadows could have received 18 months on each count, noting that "[w]hat [Meadows] did is extraordinarily serious. Do you understand that? Anybody, anybody would look at this and say this is an extraordinarily serious thing that you did." (Aug. 12, 2022, tr. 63.) Thus, based on the foregoing, we find that the trial court did not err when it allowed the state to play the dashcam video.

{¶ 27} The second assignment of error is overruled.

## III. Conclusion

{¶ 28} Meadows's guilty plea was not invalid. While some of the trial court's comments are concerning and the trial court's participation is not the "preferred practice," we do not look at these comments in isolation, but look at the record in its entirety and find that Meadows's guilty plea was knowingly, intelligently, and voluntarily made. We further find that the dashcam video of Meadows fleeing from the police, crashing into two vehicles, and causing harm to three individuals is reliable evidence that a trial court could consider at the time of sentencing.

{¶ 29} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR