[Cite as *State v. Humphries*, 2025-Ohio-455.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                      :

    Plaintiff-Appellee,         :

                                          No. 113935

    v.                          :

DAVID HUMPHRIES,                    :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN
                   PART AND REMANDED
**RELEASED AND JOURNALIZED:**  February 13, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682637-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block and Michael R. Wajda, Assistant Prosecuting Attorneys, *for appellee.*

Law office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} David Humphries ("Humphries") appeals his convictions for aggravated robbery, felonious assault and firearm offenses, with notices of prior conviction and firearm specifications as well as his associated sentence of 12-15

years in prison.  For the reasons that follow, we affirm Humphries' convictions, reverse his prison sentence and remand the case for the limited purpose of resentencing Humphries in accordance with this opinion.

## I.    Facts and Procedural History

{¶ 2} On July 10, 2023, Humphries and a codefendant were charged with 13 counts, including aggravated robbery, felonious assault and having weapons while under disability in conjunction with an armed robbery of a pizza shop which occurred on June 15, 2023 in Cleveland, Ohio.  The various counts of the indictment included firearm specifications, notices of prior conviction and repeat violent offender specifications.

{¶ 3} On April 16, 2024, Humphries pled guilty to the following:  two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), first-degree felonies; felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; two counts of felonious assault in violation of R.C. 2903.11(A)(2), second-degree felonies; and having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony.  Humphries also pled guilty to one 54-month firearm specification and five notices of prior conviction.

{¶ 4} On April 22, 2024, the court held a sentencing hearing at which Humphries made an oral motion to withdraw his guilty plea before the court imposed his sentence.  The court held a brief hearing regarding this motion and, thereafter, denied the motion.  The court sentenced Humpries to an indefinite term of six-to-nine years in prison, pursuant to the Reagan Tokes Law, for one of the

aggravated robbery convictions, 54 months in prison for the firearm specification and one-and-one-half years in prison for having weapons while under disability, all to run consecutively. The court also sentenced Humphries to concurrent prison terms for the remaining convictions resulting in an aggregate prison term of 12-15 years.

{¶ 5} Humphries appeals and raises the following assignments of error for our review:

> I. The trial court coerced Humphries into entering a guilty plea, and as a result, his guilty plea was not voluntary.
>
> II. The trial court abused its discretion by refusing to allow Humphries to withdraw his guilty plea prior to sentencing, and, in doing so, the trial court denied Humphries' rights to Due Process under the Ohio and U.S. Constitutions.
>
> III. The trial court's advisements of and notifications to Humphries about both postrelease control and the Reagan Tokes Law — which the court provided during the sentencing hearing and in the sentencing journal entry — were deficient and contrary to law, thereby mandating resentencing.
>
> IV. S.B. 201 (Reagan Tokes Law) violates the Sixth Amendment right to trial by jury and Fourteenth Amendment due process and the associated provisions of the Ohio Constitution, Article I, Sections 5, 10, and 16.

## II. Plea Hearing

{¶ 6} After extensive pretrial hearings, six of which were held in open court and on the record, this case was called for a jury trial on April 16, 2024. Humphries elected to try the count of having weapons while under disability, as well as the firearm, notices of prior conviction and repeat violent offender specifications to the bench. Humphries had rejected the State's plea offers six times on the record,

insisting that he wanted to go to trial.  Immediately prior to the jury being called into the courtroom, the following colloquy took place:

> THE COURT:  Well, look.  The ultimate decision is yours, right?  You have to understand — I don't know what all of the evidence is the State is going to bring, but are you willing to accept responsibility for the charges that have been offered as a plea bargain or negotiate a possible resolve?  Are you — do you want to do that?

> THE DEFENDANT:  Yeah.  But I also don't want to go through the process of me having to do a lot of time.  I got a newborn child to think about and everything, but like —

> THE COURT:  I understand that.

> THE DEFENDANT:  I maintain my innocence the whole time.

{¶ 7} After further discussion on and off the record, defense counsel stated, "Your Honor, I do believe at this time, after some moments to reflect, Mr. Humphries does wish to take the deal."  The trial court responded as follows:

> This is what I would like to do.  I would like to bring the jury in and I will swear them in to their oath.  Have a little dialogue with them.  Not so much.  I won't read to them the indictment.  I am going to spend about 15 minutes, and then I will tell them they can have lunch early, and then send them back to the jury pool, and then if at that time we want to have conversations, we will do that on the record at that time Mr. Humphries.

{¶ 8} The court swore the jury, explained how Humphries was indicted by a grand jury and defined various legal terms such as "probable cause" and "beyond a reasonable doubt."  The court also read Humphries' indictment to the jury and conducted a voir dire before taking a break for lunch.

{¶ 9} When court reconvened, defense counsel again stated that Humphries was prepared to plead guilty according to the State's plea offer.  The court conducted

a Crim.R. 11 plea hearing, addressed Humphries and determined that he was entering a guilty plea voluntarily with an understanding of the nature of the charges and the maximum penalty involved including that he would be sentenced to prison. The court further informed Humphries of, and determined that he understood, the effect of his guilty plea and the constitutional rights he was waiving by entering it. In other words, the court complied with Crim. R. 11(C) before accepting Humphries' plea. It is important to note that, on appeal, Humphries is not challenging the court's compliance with Crim.R. 11 outside of his allegation that the court coerced him into entering his guilty plea and, thus, his plea was not voluntary.

{¶ 10} Humphries pled guilty to two counts of aggravated robbery, three counts of felonious assault, one count of having weapons while under disability, five notices-of-prior-conviction and a 54-month firearm specification. Particular to this appeal, the court asked Humphries if he had any questions regarding his plea and Humphries answered, "No." Additionally, the court asked Humphries if "anyone from [the] Court, the deputies, [the] bailiff, or myself threatened you, or forced you, or promised you anything to have you change your plea?" Humpries responded, "No." The court found that Humphries entered his guilty pleas "knowingly, intelligently, and voluntarily this morning."

III. Law and Analysis

A. Guilty Pleas

1. Crim.R. 11 Plea Hearing

{¶ 11} Pursuant to Crim.R. 11(C)(2), the trial court

shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and . . . :

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 12} The Ohio Supreme Court summarized appellate review of compliance with Crim.R. 11(C) as follows:

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*State v. Dangler*, 2020-Ohio-2765, ¶ 17. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* at ¶ 10.

{¶ 13} A defendant demonstrates prejudice in the context of a Crim.R. 11 guilty plea by showing that he or she "would not have entered the plea but for the incomplete explanation." *Dangler* at ¶ 2. The *Dangler* Court further explained that

no demonstration of prejudice is required in two limited circumstances. First, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14. We note that a defendant's constitutional rights concerning a guilty plea are found in Crim.R. 11(C)(2)(c) and the nonconstitutional rights are found in Crim.R. 11(C)(2)(a) and (b). Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15.

{¶ 14} In his first assignment of error, Humphries argues that the "trial court coerced [him] into entering a guilty plea, and as a result, his guilty plea was not voluntary." Specifically, Humphries further argues that the "trial court's deep involvement in obtaining [his] plea resulted, intentionally or unintentionally, in undue coercion being employed against Humphries to an extent which rendered the plea involuntary and unconstitutionally obtained."

{¶ 15} In 1962, the United States Supreme Court stated that a "guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. U.S.,* 368 U.S. 487, 493 (1962). In 1980, the Ohio Supreme Court expanded on this notion:

> A judge's participation in the actual bargaining process presents a high potential for coercion. The defendant often views the judge as the final arbiter of his fate or at the very least the person in control of the important environment of the courtroom. He may be led to believe that this person considers him guilty of the crime without a chance of proving otherwise. He may infer that he will not be given a fair

> opportunity to present his case. Even if he wishes to go to trial, he may perceive the trial as a hopeless and dangerous exercise in futility.

*State v. Byrd*, 63 Ohio St.2d 288, 292 (1980).

{¶ 16} Recently, this court applied *Byrd* to a defendant's challenge to the voluntariness of his guilty plea. "Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under the Ohio and United States Constitutions." *State v. Meadows*, 2023-Ohio-1572, ¶ 12 (8th Dist.), citing *Byrd*. The *Meadows* Court reviewed the following statements made by the trial court to the defendant regarding the defendant's decision of whether to enter a guilty plea:

> (1) "a jury's not going to see it the same way you do. They just won't"; (2) "So your attorney would have to throw a no hitter here for there not to be some possible prison time, possibly substantial time"; (3) "they thought the jury would see it their way. And they didn't"; and (4) "You can go to a jury, but, you know, they're not going to see it your way. I can guarantee you that. All right?"

*Meadows* at ¶ 13. In *Meadows*, this court found that the trial court's comments, while not the "preferred practice," were related to the differences regarding the length of the prison term the defendant faced if he were found guilty as indicted versus the length of the prison term he faced if he pled guilty to reduced charges. *Id.* at ¶ 19, 20. *See also State v. Jones*, 2019-Ohio-2571 (8th Dist.), and *State v. Jabbaar*, 2013-Ohio-1688 (8th Dist.) (both holding that the trial court's comments are not to be viewed in isolation, but rather we review the entirety of the record to see if the trial court created or presented the plea offer and if the prosecutor had input regarding the plea offer).

{¶ 17} In this case, Humphries points to several comments that the trial court made in the pretrials held on the record that, according to Humphries, coerced him into entering a guilty plea. For example, Humphries argues that the "judge made statements which would have led Humphries to believe the judge already considered Humphries guilty of the crime, including because the co-defendant had already admitted his guilt." Our review of the transcript shows that the trial court stated the following at one of the pretrials: "I don't know [Humphries'] involvement in the case. I really don't. I only centered on [the codefendant] when I sentenced him and I don't know if there's mitigating circumstances to say that [Humphries is] less involved than [the codefendant] was."

{¶ 18} Humphries also argues that "[s]ome of the judge's statements plainly suggested to Humphries that the judge may not treat Humphries fairly if he chose to go to trial and lost." Our review of the record shows that the trial court stated the following at the various pretrials: "I don't have control over what the minimum sentence is. The law says 54 months consecutive on two [firearm specifications], and it could be more. Meaning I could find, looking at the law, that I could add a third gun spec consecutive"; "Sometimes I have . . . multiple defendants and one takes a plea and one doesn't, and the sentences are vastly different"; and "You don't get to pick and choose your sentence today when we bring the jury in. You do get to pick, and chose, and be involved in your sentence if you want to negotiate that with the parties."

{¶ 19} Upon review, we find that the trial court's statements and involvement in Humphries' guilty plea did not rise to the level of coercion. First, there is no evidence in the record that the court had any role in creating the plea offer or communicating it to Humphries. Rather, the court's involvement was limited to communicating to Humphries the differences in the sentencing ranges to which Humphries would be exposed by pleading to reduced charges versus taking his case to trial. By pleading guilty to reduced charges, Humphries would significantly reduce his exposure to prison time and the trial court repeatedly informed Humphries of this. The court also established that the armed robbery at issue was captured on video and that the State intended to play this video for the jury if Humphries' case went to trial. At one point, the court stated that Humphries "is a little more diligent in trying to hide his face" on the video, "but it's clearly him."

{¶ 20} We cannot say that the evidence in the record shows that the court coerced Humphries into entering a guilty plea following a full and fair Crim.R. 11(C) hearing. Accordingly, Humphries' first assignment of error is overruled.

## 2. Crim.R. 32.1 Motion to Withdraw Guilty Plea

{¶ 21} In his second assignment of error, Humphries argues that the trial court abused its discretion by denying his oral motion to withdraw his guilty plea which was made immediately prior to sentencing in this case.

{¶ 22} The withdrawal of a guilty plea is governed by Crim.R. 32.1, which states: "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside

the judgment of conviction and permit the defendant to withdraw his or her plea." We review a trial court's decision to deny a defendant's motion to withdraw a guilty plea under an abuse-of-discretion standard. *See, e.g.*, *State v. Vinson*, 2016-Ohio-7604, ¶ 42, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 23} A defendant does not have an absolute right to withdraw a plea prior to sentencing, but the "trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). A trial court's denial of a presentence motion to withdraw a guilty plea is not an abuse of discretion when the record reflects the following:

> (1) the defendant is represented by highly competent counsel; (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea; (3) after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and (4) the court gives full and fair consideration to the plea withdrawal request.

*State v. Hines*, 2020-Ohio-663, ¶ 9 (8th Dist.), citing *State v. Peterseim*, 68 Ohio App.2d 211, 214 (8th Dist. 1980).

{¶ 24} The court held a sentencing hearing in this case and, at the onset of which, Humphries indicated that he would like to withdraw his plea. The court responded by stating:

Mr. Humphries, we're here today and buyer's remorse is not a reason for withdrawing your plea. So you would have to give me a reason of what was done that you believe was not constitutionally protected.

I went through your constitutional rights. We had a jury ready to go, in that box ready to go, so I have got to make sure we are not playing. Now we're here. If you don't — I think I could get a jury up today. I think I will do that right now if that's what you want to do. I will go over everyone in [the] courthouse, including my court administrator, to go get that first jury right now because that's not a game I'm playing. We're not going to walk out of here with a, hey, let's get another date.

You tell me why you believe that your plea was against your constitutional rights.

{¶ 25} Humphries responded as follows: "I wasn't in my right state of mind. I was still grieving the loss of my little brother . . . ." The court asked the prosecutor as well as Humphries' defense counsel if "there was any reason either counsel believed that Mr. Humphries was in distress or not in his right mind to understand the change of plea?" Both counsel responded, "No, Your Honor." The court stated that Humphries did not raise the issue that he was grieving at any pretrials or at the plea hearing. Humphries responded by saying, "Everything was a blur to me, sir." The court responded as follows:

Mr. Humphries, there's certain guidelines and rules to follow with respect to allowing the appropriate withdrawal of a guilty plea and I believe that you meet none of those qualifications here today. I'm going to deny your motion to withdraw your plea based on what you are saying is maybe having grieving here in the courtroom, although that wasn't exhibited in any way over the loss of a family member clouding your judgment at the time of your change of plea.

. . .

Again, motion to withdraw a plea under Criminal Rule 32.1, I'll just read a couple things: A motion to withdraw a plea of guilty can be made before sentencing is imposed, so that was what he did on his own today.

And it would be to correct a manifest injustice after the Court had gone through his colloquy plea or set aside that change of plea.

Mr. Humphries does not have an absolute right to withdraw a guilty plea and I did conduct a hearing to determine whether there is any reasonable or legitimate basis for a withdrawal of his plea and I do find that there is no legitimate reason to allow him to withdraw that plea and no reasonable reason to allow him to withdraw that plea.

{¶ 26} In applying the *Hines* and *Peterseim* factors to this case, we find as follows: Humphries was represented by "highly competent" defense counsel throughout these proceedings in the trial court. The court stated to Humphries during one of the pretrial proceedings, "[Y]our [sic] have two great attorneys sitting to the right and left of you that are well-seasoned and have worked in this courtroom and all 33 courtrooms . . . . You have three great lawyers sitting next to you and I am not concerned at all that you are not going to be ably represented by those lawyers here today and throughout the trial."

{¶ 27} Humphries was afforded a full Crim.R. 11 hearing before he entered his guilty pleas. Humphries made an oral motion to withdraw his plea at the beginning of his sentencing hearing and the court completely and impartially allowed Humphries to state on the record why he wanted to withdraw his plea. The court asked Humphries questions, had dialogue with Humphries and inquired of defense counsel and the prosecutor as to their thoughts on Humphries' reasons. Lastly, the trial court gave full and fair consideration to Humphries' request and made a decision to deny the motion to withdraw the plea. Importantly, the court found that Humphries' reason — the death of Humphries' brother had rendered Humphries to be not in his "right state of mind — was not legitimate, particularly

because Humphries did not voice his alleged grief or state of mind at his plea hearing, which was held six days prior to his plea-withdrawal request."

{¶ 28} We are aware that presentence motions to withdraw guilty pleas are to be freely granted but this does not mean that defendants have an absolute right to withdraw their pleas. *See Xie*, 62 Ohio St.3d at 526. We are also aware that, in denying Humphries' presentence request to withdraw his plea, the court mentioned the phrase "manifest injustice," which applies to postsentence motions to withdraw guilty pleas. Our review of the transcript shows that, although the court mentioned "manifest injustice," it did not base its denial of Humphries' oral motion on that concept. The *Hines* and *Peterseim* factors are the proper standard under which we determine whether the court abused its discretion when it denied Humphries' motion. After reviewing the record before us, we find that the court did not abuse its discretion here.

{¶ 29} Accordingly, Humphries' second assignment of error is overruled.

### B. Felony Sentencing

### 1. Standard of Review

{¶ 30} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4) or 2929.20(I) or

(2) the sentence is "otherwise contrary to law." A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 2013-Ohio-2525, ¶ 10 (8th Dist.).

### 2. Notifications During Sentencing Hearing Regarding Postrelease Control and the Reagan Tokes Law

{¶ 31} In his third assignment of error, Humphries argues that during the sentencing hearing the "trial court's advisements of and notifications to [him] about both postrelease control and the Reagan Tokes law . . . were deficient and contrary to law, thereby mandating resentencing."

### a. Postrelease Control Notification at Sentencing

{¶ 32} Pursuant to R.C. 2929.19(B)(2)(f),

> if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall . . . [n]otify the offender that, if a period of supervision is imposed following the offender's release from prison, . . . and if the offender violates that supervision or a condition of post-release control . . . the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term.

{¶ 33} In *State v. Bolan*, 2024-Ohio-2640, ¶ 5 (8th Dist.), this court held that "any sentence imposed without proper notice of postrelease control is contrary to law." *See also State v. Grimes*, 2017-Ohio-2927, ¶ 8-9. The *Grimes* Court further

held that the postrelease control notifications must also be incorporated into the trial court's sentencing journal entry. *Id.* at ¶ 8. In *State v. Bates*, 2022-Ohio-475, ¶ 11, the Ohio Supreme Court succinctly stated that the "trial court must advise the offender at the sentencing hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control." The *Bates* Court further stated that the consequences of a postrelease control violation include "imposing a prison term on the offender" that "'shall not exceed one-half' of the stated prison term originally imposed." *Id.*

{¶ 34} In this case, the court notified Humphries at his sentencing hearing regarding postrelease control: "I indicated to you because you pled guilty to Count 1, a Felony of the 1st Degree, upon your release from incarceration you will have a mandatory term of post-release control . . . . Two years is the mandatory and it could be for up to five years." However, the trial court did not notify Humphries at the hearing about the consequences he would face if he violated postrelease control. We note that the trial court's April 22, 2024 sentencing journal entry states, in part, that Humphries "has been advised that if [he] violates post-release control, the parole board may impose a prison term as part of the sentence of up to half of the prison term . . . . imposed upon the defendant . . . ."

{¶ 35} The facts in this case are similar to the facts in *Bolan*. In *Bolan*, this court found that "at no time during [the] sentencing hearing did the trial court advise Bolan of the consequences he faced if he violated postrelease control." *Bolan* at ¶ 4. In *State v. Gray*, 2022-Ohio-939, ¶ 1 (8th Dist.), this court concluded that

the proper disposition on an appeal of a case in which the trial court did not properly inform the defendant about postrelease control at the sentencing stage of the proceedings is to "vacate the postrelease-control portion of [the defendant's] sentence and remand for resentencing hearing limited to the imposition of the statutorily mandated period of postrelease control pursuant to R.C. 2967.28 . . . ."

{¶ 36} We note that the State, in its appellate brief, focuses on the trial court's notifications to Humphries at his plea hearing. As stated throughout this opinion, Humphries is challenging the trial court's notifications to him at his sentencing hearing. Humphries does not challenge the notification aspect of his plea hearing.

### b. Reagan Tokes Law Notification at Sentencing

{¶ 37} Pursuant to R.C. 2929.19(B)(2)(c), when the trial court imposes a "non-life felony indefinite prison term" under the Reagan Tokes Law, the court shall notify the offender of the following at the sentencing hearing:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that

presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 38} In this case, Humphries argues that, at his sentencing hearing, the trial court "misinformed [him] that he was not eligible for any of the 'good time' credit opportunities under Reagan Tokes." To support this argument, Humphries cites *State v. Grays*, 2023-Ohio-2482 (8th Dist.) (en banc). In *Grays*, this court stated that the defendant was advised at his plea hearing that he would be "entitled to earn a reduction on the minimum term" of his Reagan Tokes indefinite prison sentence "in increments of 5 to 15 percent if [he] demonstrated exceptional conduct or an adjustment to incarceration." *Id.* at ¶ 6. Without setting forth the details of the interplay between "earned reduction" of prison time and the Reagan Tokes Law, we note that the issue in *Grays* concerned notifications to the defendant during his Crim.R. 11 plea colloquy. Indeed, the *Grays* en banc decision resolved the following question:

Does a trial court err during a Crim.R. 11 [plea] colloquy by advising a defendant, who is subject to an indefinite prison term under the Reagan Tokes Law, that he or she may earn a reduction on his or her minimum prison term for exceptional conduct or an adjustment to incarceration when the defendant is required to serve a mandatory prison term pursuant to R.C. 2929.13(F)?

*Id.* at ¶ 10.

{¶ 39} Upon review, we find that Humphries' reliance on *Grays* when challenging notifications during his sentencing hearing is misplaced, because *Grays* does not concern a sentencing hearing. However, pursuant to R.C. 2929.19(B)(2)(c)(i), the trial court was required to notify Humphries at his sentencing hearing that it is rebuttably presumed that he will be released from prison on either the expiration of his minimum term imposed or "on the offender's presumptive earned early release date," whichever is earlier. Furthermore, the trial court was required under R.C. 2929.19(B)(2)(c)(iv) to notify Humphries that his incarceration may be maintained beyond the minimum date "more than one time."

{¶ 40} Our review of the record shows that the trial court did not advise Humphries of all the mandatory notification provisions under R.C. 2929.19(B)(2)(c). Accordingly, Humphries' third assignment of error is sustained, and this matter is remanded to the trial court for resentencing for the limited purpose of properly notifying Humphries concerning postrelease control and pursuant to R.C. 2929.19(B)(2)(c).

### 3. Constitutionality of Reagan Tokes Law

{¶ 41} In Humphries' fourth and final assignment of error, he argues that the Reagan Tokes Law violates the United States Constitution and the Ohio Constitution's right to a jury trial and right to due process.

{¶ 42} In *State v. Hacker*, 2023-Ohio-2535, the Ohio Supreme Court addressed the constitutionality of the Reagan Tokes Law. The Court rejected the

appellants' claims that the provisions of the Reagan Tokes Law that allow the Ohio Department of Rehabilitation and Correction to maintain an offender's incarceration beyond the minimum prison term imposed by a trial court violated the separation-of-powers doctrine, the right to a jury trial or procedural due process. *Id.* at ¶ 1, 12-41.

{¶ 43} This issue has been repeatedly addressed and Humphries' constitutional arguments in this case do not present novel issues or any new theory challenging the constitutional validity of any aspect of the Reagan Tokes Law left unaddressed by the Ohio Supreme Court's decision in *Hacker*; *see also State v. Delvallie*, 2022-Ohio-470 (8th Dist.) (en banc). Accordingly, we reject Humphries' constitutional challenges and overrule his fourth assignment of error.

{¶ 44} Judgment affirmed in part and reversed in part. Humphries' convictions are affirmed and his sentence is reversed. This case is remanded to the trial court for a resentencing hearing to include properly advising Humphries of the consequences of violating postrelease control and properly notifying him as mandated under R.C. 2929.19(B)(2)(c).

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR