[Cite as *State v. Hicks*, 2025-Ohio-547.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                              No. 113914

    v.                           :

BERTRAM HICKS,                          :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2025

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-23-681567-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Bertram Hicks ("Hicks") appeals the trial court's decision denying his motion to withdraw his guilty plea after sentencing. We affirm the trial court's decision.

### I. Facts and Procedural History

{¶2} On June 2, 2023, Hicks was indicted on six counts including aggravated murder, murder, felonious assault, and having a weapon while under disability. The victim was Robert Hall, Jr. ("Hall"). With the exception of having a weapon while under disability, each count carried one- and three-year firearm specifications. The plaintiff-appellee State of Ohio ("the State") offered a plea deal to Hicks, which carried a mandatory life prison sentence with parole eligibility after serving 18 years. However, Hicks rejected the offer. After several pretrials and plea negotiations, a trial date was set for April 9, 2024. On April 9, 2024, the trial court allowed additional time for the State and Hicks to participate in additional plea negotiations.

{¶3} After plea negotiations with the State, Hicks pleaded guilty to amended Count 2, involuntary manslaughter and amended Count 4, felonious assault. Three-year firearm specifications attached to both counts and the plea offer included an agreed-upon sentencing range, at a minimum 20 years of flat time with the imposition of Reagan Tokes, 20 to 25 and ½ to 25 to 30 and ½ years. Additionally, Reagan Tokes was to be imposed on the involuntary manslaughter count only. On the same day, the trial court proceeded with the plea hearing. At the hearing, the trial court asked Hicks if anyone had made any promises to get him to plead guilty. Hicks replied, "[N]o." Tr. 73. Then the trial court stated: "I have to advise you that I will stay within the agreed sentencing range of 20 to 25 and 1/2 to 25 to 30 and 1/2 years. But on today's date, I make no promises with

respect to your exact sentence: do you understand?" *Id.* Hicks responded with "yes." *Id.*

{¶4} The trial court continued and complied with Crim.R. 11. The trial court then stated: "So you understand that upon sentencing, I will advise you of both a base and a maximum term?" Tr. 76. Hicks replied that he understood. The trial court continued:

> At sentencing, I will sentence you for the base term of your sentence, and this is the sentence that I believe would be an appropriate sentence for the offense. After that sentence is imposed, the maximum potential term in prison for the offense in Count 2 will be the sentence I have imposed, plus 50 percent more of the sentence imposed; do you understand?

*Id.* Hicks replied "yes." *Id.*

{¶5} The trial court continued explaining in great detail, giving examples, possible sentences in accordance with Reagan Tokes. Tr. 78. Hicks replied each time that he understood. At the end of the lengthy explanation, the trial court asked: "Do you have any questions about your rights, the charges, the penalties or anything that we placed on the record here today?" Tr. 82. To which Hicks responded that he did not. *Id.* Both the State and Hicks's trial counsel agreed that the trial court complied with Crim.R. 11. Hicks pleaded guilty. The trial court set the sentencing hearing for the following day.

{¶6} On April 10, 2024, the sentencing hearing occurred, and the trial court asked the State if there were any victims or victims' representatives that wanted to address the court. Tr. 85. The State informed the trial court that the victim's family

wanted to address the court. However, before they were allowed to speak, the trial court addressed Hicks and stated:

> Mr. Hicks, we were last in court yesterday. And, at that time, you did enter pleas of guilty to an amended indictment. First, you pled guilty to Count Two, as amended, that being involuntary manslaughter, in violation of Ohio Revised Code 2903.04(A).
>
> That charge, as amended, is a felony of the first degree. And, as we discussed yesterday, that is punishable by 3 to 11 years in yearly increments, plus that indefinite tail that we discussed in detail yesterday. And, again, that is pursuant to the Reagan Tokes sentencing law.
>
> So when the time does come for the Court to announce your sentence, with respect to Count Two, you will receive both a base and a maximum term. As we discussed yesterday, the base term will be from 3 to 11 years in yearly increments. And then the maximum term will be the sentence that I impose plus 50 percent more of the sentence imposed. Do you recall that discussion?

Tr. 86-87.

{¶7} Hicks replied that he did. The trial court continued, explaining how Reagan Tokes affects Hicks's sentence. Then the trial court stated: "You also entered a plea of guilty to the three-year firearm specification in Count Two, and that three years must be served prior and consecutive with the sentence of 3 to 11 years on the base. Do you understand?" Tr. 88. Hicks replied that he understood. The trial court continued, stating: "You also entered a plea of guilty to Count Four, as charged, that being felonious assault, in violation of Ohio Revised Code 2903.11(A)(1). That charge is a felony of the second degree. It is punishable by 2 to 8 years in yearly increments and a maximum fine of $15,000. Do you understand?" Tr. 88-89. Hicks replied that he understood. *Id.*

**{¶8}** The trial court then stated: "Additionally, you entered a plea of guilty to the three-year firearm specification in Count Four, which much be served prior to and consecutive with that prison sentence 2 to 8 years on the base charge. Do you understand?" Tr. 89. Hick replied that he understood. *Id.* Next, the trial court stated: "Additionally, there was an agreed sentencing range of 20 to 25 and a half years to 25 to 30 and a half years. And, as I indicated to you yesterday, the Court does intend to stay within that range. Do you understand?" *Id.* Hick replied that he understood.

**{¶9}** The trial court directed the State to call the victim's family members to speak to the court. However, before the State called the family members, it explained the facts of the case to the court and indicated that there are some family members that were not satisfied with the sentencing range. The State then called the victim's family members to address the court. Tr. 94.

**{¶10}** After the victim's family, Hicks's trial counsel, Hicks's grandmother, and Hicks addressed the trial court, the trial court proceeded to sentencing. The trial court sentenced Hicks, on Count Two, to 11 to 16 and a half years on the base charge and imposed the mandatory three-year firearm specification, to be served consecutively. Tr. 123. The trial court sentenced Hicks, on Count Four, to five years on the base charged and imposed the mandatory three-year firearm specification, to be served consecutively. Tr. 124. The total prison sentence to be served is 22 to 27 and a half years, which includes the required Reagan Tokes sentencing.

{¶11} The trial court remanded Hicks to the county jail, but a brief recess was requested by Hicks. Hicks then made a motion to withdraw the plea because he believed that the plea was obtained upon advice that turned out not to be predictive of what would happen. Hicks's trial counsel explained that they believed the State's range was 20 to 24 years, and Hicks believed that he would get 17 to 22 years, agreeing to plead to 20 years flat. Tr. 126-127. Hicks's counsel explained that Hicks believed that the trial court, even though the trial court did not indicate as such, would sentence him to 20 years.

{¶12} Hicks felt as if everyone misled him to believe he would receive 20 years, and that was why he entered a guilty plea. Tr. 129. As a result, Hicks requested to withdraw his guilty plea and go to trial. The trial court responded and stated:

> Mr. Hicks, I absolutely told your lawyers that, depending on what I heard at the sentencing — like, in chambers, I was thinking 20 years may be reasonable, but there's information I don't know. You know, I don't know all of the information until I hear from you, your family, the victim's family, the State of Ohio, your lawyers.
>
> And I received some information today during your sentencing that tipped the scale a bit for me, not to the point where I was gonna go to the top of that range, because I did not feel that that was appropriate. But there was a bit of tipping of the scale that made me feel that the minimum was not appropriate, and so that's how I ended up with the sentence that I handed down to you today.
>
> At this point in time, I am going to deny your motion to withdraw your plea. The sentence will stand.

Tr. 133.

{¶13} Hicks filed this appeal and assigned one error for our review:

The trial court abused its discretion when it denied appellant's motion to withdraw his plea.

## II.    Standard of Review

**{¶14}** A motion to withdraw a guilty plea is governed by Crim.R. 32.1. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  "The defendant bears the burden of establishing the existence of 'manifest injustice.'" *State v. Hobbs*, 2021-Ohio-852, ¶ 6 (8th Dist.), citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "Manifest injustice is 'a clear or openly unjust act,' *Id.,* quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998), 'that is evidenced by an extraordinary and fundamental flaw in the plea proceeding,'" *Id*., quoting *State v. McElroy*, 2017-Ohio-1049, ¶ 30 (8th Dist.), quoting *State v. Hamilton*, 2008-Ohio-455, ¶ 8 (8th Dist.).  "'As such, the postsentence withdrawal of a guilty plea is warranted only in extraordinary cases.'" *Id*., quoting *State v. Rodriguez*, 2016-Ohio-5239, ¶ 22 (8th Dist.), citing *Smith* at 264.  "The requisite showing of manifest injustice must be based on specific facts in the record or supplied through affidavits submitted with the motion." *Id.  See, e.g., State v. Geraci*, 2015-Ohio-2699, ¶ 10 (8th Dist.).

**{¶15}** We review a trial court's decision to deny a defendant's postsentence motion to withdraw a guilty plea under an abuse-of-discretion standard. *Id*., citing

*State v. D-Bey*, 2021-Ohio-60, ¶ 58 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

### III. Law and Analysis

**{¶16}** In Hicks's sole assignment of error, he argues that the trial court abused its discretion when it denied his postsentence motion to withdraw his guilty plea. Hicks believed that the trial court was going to sentence him to 20 years in prison. The record reveals that at the plea hearing, the trial court stated: "I have to advise you that I will stay within the agreed sentencing range of 20 to 25 and 1/2 to 25 to 30 and 1/2 years. But on today's date, I make no promises with respect to your exact sentence: do you understand?" Tr. 73. Hicks responded with "yes." *Id.*

**{¶17}** The trial court also asked Hicks if anyone had made any promises to him to induce him to plea. Hicks stated no. At the sentence hearing, the trial court reviewed Hicks's plea in detail with him. The court explained the possible penalties, reviewed Reagan Tokes as it related to Count two, and informed Hicks of the three-year firearm specifications associated with both counts. Tr. 86-89.

**{¶18}** The trial court reiterated its intentions regarding the sentence. It stated:

> Additionally, there was an agreed sentencing range of 20 to 25 and a half years to 25 to 30 and a half years. And, as I indicated to you yesterday, the Court does intend to stay within that range. Do you understand?

Tr. 89.

{¶19} Hicks responded in the affirmative. Several of Hall's family members addressed the court on how his death has affected the family, notably his six- and eight-year-old nieces. Hicks's grandmother also addressed the court.

{¶20} After Hicks concluded, the trial court stated:

> And I am very much struck by, obviously, the close bond that he shared with his six-year-old niece and his eight-year-old niece. In particular, you know, his six-year-old niece, all she wanted for her birthday was a picture of him. I mean, I have a six-year-old myself, and I can tell you that birthday list is, usually, a mile long. But when, you know, you just want a picture of your uncle who you can no longer see, that's very telling.

Tr. 120.

{¶21} The trial court continued stating how deeply the family was affected and hoped that sentencing would provide some closure. *Id.* The court addressed Hicks and stated that it was happy that he was going to make the most out of his incarceration. Tr. 122. The trial court sentenced Hicks to 22 to 27 and a half years in prison, which is within the range that the trial court promised.

{¶22} After learning of his sentence, Hicks made his motion to withdraw his plea. Defense counsel informed the court that he had indicated to the State and the court that Hicks would plea to 20 years as a flat number. Tr. 127. Defense counsel stated that he informed Hicks that he was "pretty confident" that he would be sentenced to 20 years. Tr. 128. The trial court explained that it informed defense counsel and the State it was considering 20 years to be reasonable contingent on not hearing unknown information. Tr. 133. The court continued by stating that it must hear from Hicks, his family, the State, the victim's family and defense

counsel. *Id.* Finally, the court stated, "And I received some information today during your sentencing that tipped the scale a bit for me, not to the point where I was gonna go to the top of that range, because I did not feel that that was appropriate."

{¶23} We determined that the trial court did not sentence Hicks to the maximum term, nor did the trial court sentence Hicks to a term that was not explained to Hicks. Thus, Hicks has not demonstrated that a manifest injustice occurred. "On a post-sentence motion to withdraw a plea, the defendant has the burden of showing the existence of a manifest injustice." *State v. Peak*, 2024-Ohio-735, ¶ 22 (8th Dist.), citing *Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. Hicks fails to meet his burden in this case.

{¶24} Hicks also states that the trial court's reference to her own child was impermissible and created a manifest injustice. R.C. 2947.051 states that the trial court "shall consider the victim impact statement in determining the sentence to be imposed upon the defendant." This court finds that the trial court complied with the statute. It had informed defense counsel and the State that it must hear the unknown to complete its sentence. This court does not find that the trial court's statements regarding her daughter created a manifest injustice, rather it brought context to the seriousness and the reality of Hall's six-year-old niece's request. For this reason and the reasons stated above, we find that the trial court did not abuse its discretion when it denied Hicks's motion to withdraw his plea.

{¶25} Therefore, Hicks's sole assignment of error is overruled.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

WILLIAM A. KLATT, J.,* CONCURS;
EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

EILEEN T. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

**{¶ 27}** Respectfully, I concur in judgment only with the majority's decision overruling the assignment of error and affirming the judgment of the trial court. I write separately to further illustrate why the trial court did not abuse its discretion in denying Hicks's motion to withdraw his plea.

**{¶ 28}** The court sentenced Hicks to 11 to 16 and a half years on the involuntary manslaughter charge and five years on the felonious assault charge. Hicks was also sentenced to two three-year sentences for the firearm specifications,

to be served prior to and consecutively with the underlying charges, for a total sentence of 22 to 27 and a half years in prison.

{¶ 29} After the sentencing hearing concluded, defense counsel asked to go back on the record and moved to withdraw Hicks's plea. He argued that the plea was obtained based upon counsel's advice that the court had stated that Hicks would receive a prison term of only 20 years. Defense counsel noted that the parties had met with the court in chambers prior to the plea and stated:

> The Court indicated in that conversation that it would be — I don't want to put the wrong modifier on there, 'cause I don't want to make it seem stronger than what the Court actually said. But the Court said, at one point, I believe, that it would probably be at 20, but the Court wanted more information about the case.
>
> We did talk about the case a little bit more, and then I think the Court said it probably would be at 20 again. You know, when myself and [co-counsel] heard that, we assumed the Court would be at 20 years in regards to the sentencing range, no matter what it turned out to be. We talked to the prosecutors about it afterward, and we let them know as much, as well.
>
> We talked to Mr. Hicks about it afterward in his cell before he entered the plea. We let him know as much, as well. You know, I think, at one point, I said, "I'm pretty confident that you're gonna get 20, because she mentioned 20 at the beginning of the conversation. And then, after hearing information about the case, she went back to that number." And it wasn't a range of 20 to 21 or 21 to 22. It was 20.

(Tr. 127-128.)

{¶ 30} However, defense counsel then specifically conceded that "[t]he Court, for the record, to be clear, did not promise that it was going to give 20, either in the back or on the record. And we did not make a promise to Mr. Hicks that he was gonna get 20." (Tr. 128.)

{¶ 31} The court denied Hicks's motion to withdraw his plea, stating that when it spoke with counsel in chambers, 20 years had seemed like a reasonable sentence, but at that point, it did not know all of the information that would come out at the sentencing hearing. The court explained that the information received at the sentencing hearing "tipped the scale" toward more than a minimum sentence of 20 years.

{¶ 32} Hicks argues in his brief that he "received assurances provided by the trial court and his defense counsel that the court would sentence him to 20 years." He further states that the "deviation from the promised sentence is an injustice to Mr. Hicks because he entered his guilty plea relying upon the court's representation that he would receive a 20-year sentence." Hicks asserts that the court deviated from "the sentence promised" to his defense counsel and that his counsel was "ambushed" by the sentence imposed. Hicks contends that he "would not have entered his guilty plea BUT FOR the trial court's assertion to his counsel that it would impose the lower 20-year sentence." (Emphasis in original.)

{¶ 33} The transcript belies Hicks's arguments. At the plea hearing in this matter, the court engaged in an extensive colloquy with Hicks, pursuant to Crim.R. 11. Hicks was specifically asked by the court whether anyone had made any promises to him in order to induce him to plead guilty. Hicks responded, "No." Directly after this response, the court stated, "I have to advise you that I will stay within the agreed sentencing range of 20 to 25 and a half to 25 to 30 and a half years.

But on today's date, I make no promises with respect to your exact sentence; do you understand?" Hicks responded, "Yes."

{¶ 34} The sentencing hearing was held the following day. The court again acknowledged the same agreed sentencing range and informed Hicks that it intended to "stay within that range." Hicks again confirmed that he understood.

{¶ 35} It is clear from the statements made on the record by counsel for the State, defense counsel, and the trial court that there had been a discussion in chambers regarding the plea negotiations. Prior to the plea hearing, after the parties outlined the status of such negotiations, the trial court stated that she had "no intention of meddling in plea negotiations" but inquired as to whether the parties had discussed flat time. I do not believe, from the record before us, that the court's statements made during any of these discussions rose to the level of a promised sentence.

> Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under the Ohio and United States Constitutions. *State v. Byrd*, 63 Ohio St.2d 288, 293-294 (1980). Instead, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Id.* at 293. Ordinarily, a plea should be found involuntary and unconstitutional "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *Id.* at 293-294.

*State v. Jabbaar*, 2013-Ohio-1655, ¶ 26 (8th Dist.).

{¶ 36} Here, the trial court did not participate in plea negotiations to the extent that the voluntariness of Hicks's plea could be questioned. The record reflects

that the trial court inquired once about the prospect of flat time and mentioned a possible sentence of 20 years to counsel in chambers. However, at the plea hearing, the trial court unequivocally conveyed to Hicks that he would be sentenced within a range of 20 to 25 and a half years to 25 to 30 and a half years. The ultimate sentence of 22 to 27 and a half years falls within that agreed-upon range.

{¶ 37} The court explicitly advised Hicks that it was making no promises with respect to the exact sentence that would be imposed, and Hicks conceded that no promises had been made to induce him to enter into his plea. Thus, there was no promise of a 20-year sentence by the court.

{¶ 38} Moreover, to the extent that Hicks suggests that he relied upon his counsel's promise that he would receive a 20-year sentence, this argument also fails. This court has held that where the record does not show that the trial court promised a particular sentence, and the defendant did not argue that the trial court failed to explain his rights on the record, "any promise made by counsel prior to the trial court's plea colloquy with [the defendant] would be vitiated and cannot be used to support the claim that the plea would not have been made." *State v. Simmons*, 2010-Ohio-6188, ¶ 13 (8th Dist.). *See also State v. Blatnik*, 17 Ohio App.3d 201, 203 (6th Dist. 1984) ("manifest injustice, as contemplated by the rule [regarding motions to withdraw guilty pleas], does not ipso facto result from counsel's erroneous advice concerning the sentence that will be imposed").

{¶ 39} Whatever representations had been made to Hicks by counsel off the record prior to the plea hearing regarding the potential sentence were altered or

clarified by the trial court on the record when the court stated that it would "stay within the agreed sentencing range of 20 to 25 and a half to 25 to 30 and a half years" but that it made "no promises." Hicks at this point could have declined to plead and proceeded to trial, but he did not do so. While Hicks apparently clung to the mistaken belief that he would be guaranteed a 20-year sentence by entering a plea, this belief is not supported by the dialogue on the record.

**{¶ 40}** Hicks failed to demonstrate a manifest injustice, and this was not the extraordinary case that would warrant the postsentence withdrawal of a guilty plea. The trial court properly denied Hicks' motion to withdraw plea.